## HAROLD E. WADE, AS ADMINISTRATOR, v. NATIONAL BANK OF COMMERCE OF MANKATO.[1]

### November 21, 1919.

### No. 21,474.

**Venue — defendant estopped from raising question.**

1. By answering in an action in replevin without objecting to the venue and asking affirmative relief, and by stipulating to a transfer of the property involved, during the pendency of the suit, to the custody of a party in the county where the action was instituted, a defendant is precluded from raising the question whether the suit can be maintained in

[1] Reported in 174 N. W. 889.

any other county than the one wherein the property was located when the action was begun.

### Replevin — defendant not entitled to judgment upon pleadings.

2. Defendant was not entitled to judgment on the pleadings. The general allegations of ownership and right of immediate possession in the complaint were sufficient, until met with the answer that the defendant was a bona fide holder, and then the reply could properly join issue on that point.

### Same — what is sufficient description of the property.

3. A description of the property in a replevin action is sufficient, if therefrom the officer may identify the property to be seized and defendant the property involved, so that a proper defense may be made.

### Construction of contract — conditional delivery.

4. The delivery at the same time of an insurance policy, a promissory note for the premium therefor, and a written contract concerning a return of the "premium" *held* to constitute one transaction. And when so considered, in the light of surrounding circumstances, the contract should be construed as an agreement that the payee in the note was to return it to the maker, if, at any time within 60 days, the maker obtained more satisfactory insurance than contained in the policy mentioned, thus making the delivery conditional.

### Promissory note — bona fide holder — burden on defendant.

5. The fact being proven beyond dispute that under the agreement plaintiff was entitled to the possession of the note, the sole issue left was whether defendant purchased the same without notice of the agreement, and the court correctly charged that the burden was upon defendant to show itself a bona fide holder in due course, without notice.

### Same — oral testimony of conditional delivery admissible.

6. There was no error in admitting oral testimony to the effect that the delivery of the promissory note was conditional, nor as to what should be done with the insurance policy if other insurance was effected, since nothing in regard to that matter is contained in the written instruments then delivered.

### Same.

7. The written contract referred to did not permit a transfer of the note before the expiration of the 60 days therein specified.

### Evidence — immediate transfer not allowed.

8. The evidence is sufficient to warrant the jury in finding that defendant was not a bona fide holder of the note, in due course, without notice.

**No estoppel against plaintiff.**

9. The evidence does not show plaintiff estopped from claiming a return of the note.

**New trial denied.**

10. Certain other grounds for a new trial considered and *held* without merit.

Action in replevin in the district court for Martin county to recover possession of a promissory note or for $1,425.60 its value. The case was tried before Dean, J., and a jury which returned a verdict in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*H. L. & J. W. Schmitt, H. W. Volk, Hughes & Ellsworth* and *Paul C. Cooper,* for appellant.

*J. E. Haycraft,* for respondent.

HOLT, J.

Action in replevin for the possession of a promissory note. Verdict for plaintiff and defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

On June 26, 1917, F. E. Wade delivered his promissory note, payable to the order of C. D. Buckpitt, to the payee. The note was for $1,425.60, due in 90 days from the date mentioned. It is undisputed that the note represents the amount of the premium for a life insurance policy then delivered to Wade, and that, as part of the transaction, Buckpitt made and delivered to Wade this agreement: viz.:

"Dear Mr. Wade: In accepting settlement for policy No. 2,248,089 it is hereby agreed that in event of your being able to secure a policy or policies in other companies that will be more satisfactory to you within sixty days, the premium of Fourteen hundred and twenty-five 60/100 dollars ($1,425.60) will be returned to you without reservation.

"C. D. Buckpitt,
"Spl. Agt."

Wade testified that Buckpitt solicited the insurance, but that Wade was unwilling to accept a policy upon the terms proposed, thinking he could

obtain cheaper insurance in other companies; that thereupon it was agreed that Wade should receive the policy mentioned conditionally, to be returned if, at any time within 60 days thereafter, Wade was able to obtain more desirable insurance, and in that case the note also should be returned to Wade; that within the 60 days Wade did find more acceptable insurance, and thereupon, within said time, notified Buckpitt thereof and returned the policy he had received from him. Upon these facts, and a demand for the possession of the note, plaintiff predicated his suit. The defense was that defendant in due course purchased the note, before maturity, for value, and without notice.

Before considering the merits of the controversy, some questions of practice, raised by defendant, must be disposed of.

It is said the venue was laid in the wrong county, therefore the district court of Martin county was without jurisdiction, the point being that section 7718, G. S. 1913, provides that, except in cases where the taking was wrongful, plaintiff must bring the action in the county where the property is when the suit is brought. Here the note was in possession of defendant in Blue Earth county when the action was instituted in Martin county. The defendant is not in position to invoke an application of the statute, even were it construed as defendant's counsel contends. It answered without objecting to the venue, and, after alleging title, asked affirmative relief that it be adjudged the owner and entitled to the possession of the note, and in case a delivery thereof cannot be had it be awarded $1,425.60 with interest. Furthermore, the fact seems to be that on October 13, 1917, the note was delivered to a bank in Martin county, under a stipulation that said bank should keep it during the pendency of the action and deliver it to the party designated and ordered by the court therein. By what is above said, we do not intimate that there is no jurisdiction to entertain a replevin action in any other district court than the district court of the proper county for the bringing of such action under the provision of said section 7718.

It is claimed that defendant was entitled to judgment on the pleadings, because they disclose that the note was no longer in the possession of the party whose signature appears thereon; hence, under section 5828, G. S. 1913 (section 16 of the Negotiable Instruments Act), "a valid and intentional delivery by him is presumed until the contrary is proved." The

answer to the contention is that the allegations of the reply present the issue that the delivery was conditional and special and not for the purpose of transferring title, which issue, if maintained by plaintiff, entitled him to reclaim the note under the first provisions of the section mentioned, unless defendant was a good faith purchaser for value, before maturity, and without notice. The general allegations in the complaint of ownership and right of possession were sufficient, until defendant came with its allegation of title through purchase, which was then properly met by the reply.

There is no merit in the claim that there is a fatal variance in the description of the note in the complaint, in that the words "or order" are omitted. Such a description as will sufficiently point out the property for seizure, so that the officer may be enabled to execute the writ and the defendant to defend his right of possession, is all that is required in the complaint. There is no difficulty here. The answer gave a more particular description than the complaint, and this the reply acknowledged to be correct. There could be no issue raised in respect to the identity of the note.

A proper view of the case, and the trial, may be had by considering whether, upon the transaction of June 26, 1917, Wade could have recovered possession of the note from Buckpitt, if held by him, after Wade had, within 60 days, obtained other more acceptable insurance, had returned the policy delivered to him by Buckpitt, and had demanded a return of the note. There can be no possible doubt of Wade's right to so do, provided the word "premium" in the agreement means this note.

Of course "premium" with reference to insurance contracts has a well understood meaning. Usually it refers to the amount in cash which the insured pays to the insurer for keeping the policy in force during a stated period. But often promissory notes are accepted in lieu of the money. In this case, there can be little doubt that the writing signed by Buckpitt, in the light of the circumstances surrounding its execution and unaided by any testimony as to what the parties then stated, should be construed to mean that this note should be returned, and not $1,425.60 in money. No premium other than the note had been received by Buckpitt or the insurance company. The stipulation for a return should, in the absence of explanation, be taken to mean a return of the identical thing

received thereunder, upon the happening of the specified contingency. The delivery of the insurance policy, the written agreement, and the note was but one transaction. We therefore think the trial court was right in construing the writing which Buckpitt signed to be an agreement for the return to Wade of this note in the event he, within the time specified, procured other insurance more satisfactory to him. There was no dispute in the evidence that, within the 60-day period, Wade obtained such other insurance, that he returned the policy specified in the agreement to Buckpitt, and demanded a return of the note.

The controverted issue of the trial was therefore narrowed down to the question of whether or not defendant was a bona fide holder in due course and without notice; and on that issue, the agreement having been proven, and it being indisputably a part of the note transaction, we also think the trial court right in charging the jury that the burden was upon defendant to prove that it was a bona fide holder, without notice, notwithstanding the character of the action. It seems also that the charge was right, on the theory that the title to the note was defective in that it was negotiated by Buckpitt "in breach of faith, or under such circumstances as amount to a fraud." Section 5867, G. S. 1913; McWethy v. Norby, 143 Minn. 386, 173 N. W. 803.

Defendant insists that it was entitled to a directed verdict, the main grounds being: The agreement to return the note was executory and had not been breached when the note was bought, the delivery was not conditional, the notice the bank had did not disclose any defense, and plaintiff is estopped from asserting lack of bona fides.

Running through the arguments on these propositions is the claim that the conversations relative to the transaction were merged in the agreement and were inadmissible to vary or contradict the terms thereof. Objections were made and exceptions taken to testimony as to what was said between Wade and Buckpitt at and prior to the transaction of June 26, 1917. Insofar as this evidence would tend to show a conditional delivery of the note it was admissible. Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057. The delivery of the note could hardly be other than conditional, since it was subject to be returned to Wade at any time, within the period fixed, if the latter procured more satisfactory insurance. As tending to show the conditional character of the delivery

the testimony was properly admitted that Buckpitt said "that that note wouldn't go any farther than him until the sixty days was up; it wouldn't be used in any way." Again, it is clear that the writings do not undertake to cover the entire transaction. Therein nothing is said as to what Wade should do with the policy he received from Buckpitt upon the happening of the event which called for a return of the note. Hence the conversations were admissible to show what was agreed in that respect, namely, that the policy mentioned in the agreement should be returned to Buckpitt. French v. Yale, 124 Minn. 6, 144 N. W. 451. And, when so shown, it became a circumstance to be taken into consideration in a construction of the written agreement. Nothing of substance is found in the testimony of Wade as to what was said when the note, policy and agreement were delivered, except the above quoted statement of Buckpitt and that of the return of the policy to Buckpitt.

There is no merit in the claim that the agreement is executory, and hence, prior to a breach, defendant could purchase the note in disregard of the agreement, even though it had notice thereof. A purchaser with notice would stand in the shoes of Buckpitt, and he, on the undisputed facts of this case, could neither have recovered upon the note, nor defended against a suit by Wade for its possession.

The conditional character of the delivery has already been disposed of contrary to defendant's contention. Assuming the truth of Wade's testimony, it is, nevertheless, contended the evidence shows that the notice defendant had did not disclose a defense, or such facts that its purchase of the note thereafter could be held to have been in bad faith. Wade testified that, on June 28, defendant's cashier called him at Fairmont by long distance telephone from Mankato and, after introducing himself, "he asked me if I had given Mr. Buckpitt a note for $1,425.60, or if I signed a note, and asked me what it was for. I told him I had made a note to Mr. Buckpitt for life insurance, but it was not to be cashed for sixty days. And he says, 'Mr. Buckpitt wants to talk to you' and Mr. Buckpitt then took the phone. * * * Mr. Buckpitt said to me that he was owing quite a board bill there and the company wanted to get their money out of that, and he wanted to know if it was all right to use it as security to clean up some debts. I told him under the agreement he was to hold that note." The jury could readily find from this

that, when the cashier learned that there was some agreement which interfered with a transfer of the note, he purposely refrained from learning more, and placed Buckpitt in communication with Wade to see whether the agreement could not be modified or waived. We are of the opinion that the jury could find that such circumstances came to the cashier's notice touching the agreement and conditional delivery of the note, that his failure to pursue further inquiry before buying amounted to bad faith.

In this connection we observe that the notice here conveyed information of an agreement not to transfer the note which under the decision in Snelling State Bank v. Clasen, 132 Minn. 404, 157 N. W. 643, would be quite sufficient. In that case the note had on its back the words "as per contract," and a contract accompanied the note, when purchased, which, however, did not affect the negotiability of the note; therefore, it was held that the purchaser was not put upon inquiry by the words on the note (which could not be disregarded) for another contract prohibiting its negotiation. But the opinion holds that, if there had been facts suggesting an inquiry for the second contract, the purchase would not have been bona fide. The jury in the case at bar could find from the evidence that defendant had notice of an agreement prohibiting a transfer of the note.

No estoppel can be discovered in the fact that Wade permitted the note to be made in negotiable form, since the jury could find, and did find, that defendant bought with notice.

No prejudicial error was made in the reception of Wade's testimony as to the conversation with defendant's cashier after the purchase of the note. This was admissible on the theory that the cashier in his official capacity sought an interview with Wade concerning the note.

In view of the stipulation, under which the Fairmont Bank held the note pending the trial, to be delivered to the party the court should order, there is no merit to the contention that there was a mistrial because the jury omitted to find the value of the note.

A new trial was asked because of misconduct of plaintiff's counsel. Granting or refusing a new trial on that ground rests largely in the discretion of the trial court. Smith v. Great Northern Ry. Co. 133 Minn. 192, 158 N. W. 46. No abuse of that discretion appears in this case.

There are many other assignments of error than those so far noticed. They have all received attention, but their discussion is not deemed necessary. They do not call for a reversal.

The order is affirmed.