## TOWLE-JAMIESON INVESTMENT COMPANY v. D. F. BRANNAN AND OTHERS.[1]

November 6, 1925.

No. 24,833.

**When parol evidence is competent to show promissory note did not become operative.**

1. Where one indorses a promissory note, made by another, before delivery, and the note then passes from the maker to the payee, that is prima facie a delivery. But, when the answer of such indorser alleges an oral agreement, to the effect that the note should not become operative until indorsed by certain other parties, which never occurred, it is competent to show such agreement by parol evidence.

**When payee of indorsed note is not holder in due course.**

2. The payee named in a promissory note, indorsed in blank before delivery by the person to be held, with notice to the payee that such indorsement was made under an oral agreement that the note should not become operative until indorsed by a third party, is not a holder in due course.

**Rulings on evidence.**

3. There was no error in the ruling as to the admissibility of evidence. The parol evidence rule was not violated.

[1]Reported in 205 N. W. 699.

**Burden of proof and closing argument.**

4. The court correctly instructed the jury that the burden of proof was upon the answering defendants, and there was no error in allowing the defendants the closing arguments.

1. See Bills and Notes, 8 C. J. p. 210, § 339; Evidence, 22 C. J. p. 1156, § 1548.
2. See Bills and Notes, 8 C. J. p. 469, § 686.
3. See Evidence, 22 C. J. p. 1153, § 1542.
4. See Bills and Notes, 8 C. J. p. 1075, § 1396; Trial, 38 Cyc. p. 1307.

Action in the district court for Marshall county. The case was tried before Grindeland, J., and a jury which returned a verdict in favor of defendants. Plaintiff appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*A. N. Eckstrom* and *H. C. Rowberg,* for appellant.

*Julius J. Olson* and *Rasmus Hage,* for respondents.

QUINN, J.

Action upon a promissory note of $2,250, given by D. F. Brannan to the Citizens State Bank of Argyle and indorsed by the other five defendants. The indorsers answered, denying liability. There was a verdict in favor of the answering defendants. Plaintiff moved for judgment or for a new trial, and appealed from an order denying its motion.

The defendant D. F. Brannan was a blacksmith by trade, desirous of acquiring a blacksmith-shop and equipment of his own at Argyle, this state. He conceived the plan of raising funds for such purpose by executing his note for the necessary amount, payable in one year, and to get eight named persons to indorse the same so as to enable him to raise the money at the Citizens State Bank of Argyle, and then to do blacksmithing work for such indorsers during the year intervening between the date of the note and its maturity and have the bills for such work paid to the bank, and the amount thereof indorsed upon the note. The note was so executed, but only five of the eight persons named indorsed it, and those who did in-

dorse it had no notice or knowledge that the other three had not done so. The note was not paid at maturity, nor were any payments indorsed thereon.

Shortly after its maturity, Brannan undertook to have the time of payment extended by a renewal of the note. To that end he solicited his friends, who had acted as indorsers for him, to sign a blank form of note, upon the back, the face thereof to be filled in and signed by himself, for the purpose of taking up the old note and extending the time of the payment thereof, with an understanding that all of the indorsers on the first note should indorse the new note. After the blank had been signed by three or more of the respondents, the face of the blank was filled out, in the handwriting of John Hurowski, assistant cashier of the Citizens State Bank, dated October 1, 1920, and maturing in one year, for $2,250, with interest at the rate of 10 per cent per annum. The defendant Felix Fournier testified in effect that on June 2, 1921, the defendants Brannan and Poitras, came out to the field where he was seeding barley, in an auto driven by the witness, Oscar Aasand; that Brannan got out of the car alone and wanted him to sign the note; that the blank note was not filled out then; that Brannan told him there were to be eight names on the back of it, the same as the ones on the old note; that he then signed his name and that he never saw the paper afterwards.

The defendant Piquette testified under objection that his signature was the fourth one on the back of the note in question; that he was in the bank at Argyle when he signed it; that the note had been filled out when he signed it on the back; that the signatures of Poitras, Fournier and Melo were there when he signed, but that Mr. Robertson's was not; that, sometime in June, 1921, he received a notice from Hendrikksen to come to the bank and sign the renewal note; that he thereafter went to the bank and indorsed the note; that, before he signed, Hendrikksen told him that the eight persons named, including Cronkhite, Hardy and Laundreville, were to indorse the note; that the bank had security on all of Brannan's property, including his blacksmith tools, and that the security was

worth more than the amount of the note; that, in about six weeks or two months after signing, he went to the bank to learn if the eight had all signed, and that Hendrikksen told him that they had all signed up.

It is the contention of appellant that the payee of the note sued upon was a holder in due course, and that the plaintiff, in becoming the owner thereof, acquired and has all the rights of the payee named in the instrument. In submitting the case, the trial court instructed the jury as follows:

"The burden of proof in this case is upon the answering defendants. Unless they have established their defense by a preponderance of evidence, the plaintiff is entitled to recover. Now, what are the claims of these defendants? They claim that the defendant, D. F. Brannan, needed to raise some money to carry on a blacksmith shop at Argyle; that he had no credit at the bank and could not get the money unless a certain number of his friends would indorse the note. And these defendants agreed on certain conditions to help Mr. Brannan. And these defendants claim that it was understood and agreed by and between said bank, through its cashier, Oscar Henrikksen, that James Hardy, Thomas Laundreville and Chase Cronkhite were also to indorse the note before it was to be delivered and used by the bank. The plaintiff denies the agreement set up by the defendants and right here is the issue in this case.

"If you find from the evidence that there was no such agreement made, then the plaintiff is entitled to recover the full amount of the note, with interest thereon from its date. On the other hand, if you find that such an agreement was made and that the bank was a party to it, then the plaintiff herein cannot recover and your verdict should be for the defendants."

The evidence establishes, beyond a doubt, that Mr. Brannan, maker of the note, stated to most if not all of the indorsers to be charged, that the same eight men who indorsed the first note would indorse this one, and there is evidence that the cashier of the payee, Citizens State Bank, stated in effect the same thing to certain of the indorsers, prior to their indorsement of the note. There

is also testimony in the record to the effect that, after some of the indorsers to be charged had indorsed their names upon the paper, the assistant cashier of the bank filled out the face of the note in his own handwriting. Neither Hardy, Laundreville nor Cronkhite, who were supposed to have indorsed the first note, ever signed or indorsed the note now in question. Under the showing made, it was for the jury to say whether there was such an agreement or understanding, between the parties to the note, as to how many indorsers there were to be on the note, and whether the payee named in the note knew of or was a party to such an understanding. The jury, having found in favor of the answering defendants in this regard, it must follow that the delivery to the bank was conditional and could not become operative as against the indorsers until the instrument was indorsed by all eight of the persons referred to. There was ample evidence to warrant the finding that the note was incomplete at the time the payee received it, and that it had notice of the infirmity which rendered it so. The plaintiff obtained the note after maturity, and, under the findings of the jury, it follows that the plaintiff was not a holder in due course. G. S. 1923, § 7059; Wade v. National Bank, 144 Minn. 187, 174 N. W. 889. The testimony of Robertson and Piquette, as to their conversation with the cashier of the bank, is emphasized by the absence of the old note, the failure of the assistant cashier to testify whether the renewal note came to the bank a blank instrument and with but three indorsers, and the failure to show by the bank records who the indorsers of the old note were. All might properly be considered in determining whether the original payee was a bona fide holder in due course.

The parol evidence rule was not violated. The testimony, objected to upon that ground, all relates to the question of delivery. It in no way limited or affected the written contract itself. It was offered for the purpose only of showing that the note was not a complete instrument when received by the bank. Its purpose was not to show any change in the contract, but that when delivered the note was not a contract at all within the rule of Skelton v. Grimm, 156 Minn. 419, 195 N. W. 139. For such purpose, the evidence was

properly received. Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057; American Multigraph Sales Co. v. Grant, 135 Minn. 208, 160 N. W. 676; Silliman v. Dobner, infra, page 87.

The court correctly instructed the jury that the burden of proof was upon the answering defendants to establish the allegations of their answer, and there was no reversible error in allowing defendants the closing arguments.

Affirmed.