275 So.2d 680

**Joe W. REID**

v.

**UNITED SECURITY LIFE INS. CO. et al.**

**SC 54.**

Supreme Court of Alabama.

Feb. 22, 1973.

Rehearing Denied April 19, 1973.

S. P. Keith, Jr., Birmingham, for appellant.

Charles L. Robinson, Birmingham, for appellees.

254

FAULKNER, Justice.

This is an appeal from a final decree in equity rendered by the Circuit Court of Jefferson County. The sole assignment of error by appellant is that the court below erred in rendering a final decree on September 13, 1971, for only $6,281.54, when the decree should have been for $7,268.68 for 1966, and $89,590.59 for 1967, plus interest. The appellee's joinder is that there is no error in the record. We agree with the appellee and affirm the trial court.

Appellant Reid entered into a written employment agreement with appellee, United Security Life Insurance Company, in November, 1958. The agreement is not dated and is not signed. However, both parties concur that the agreement states the terms to which they agreed, and that the original agreement could not be produced at the trial.

The agreement provided that Reid was hired by United to take charge of, conduct, manage and direct United's Credit Life Department and Credit Life Business. In consideration for his services Reid was to receive 50% of the net profits realized from the Credit Life Business. "Net profits" was defined as "that amount left after all expenses of the Credit Life Department are deducted from premiums received for the company from the Credit Life Department". The agreement provided that Reid was to receive an advance each month. The amount is left blank in the agreement. However, Reid was advanced $1,000.00 per month from June, 1961, until March, 1967, when United ceased to make any further advances to Reid.

The agreement further provided that United could cancel the agreement without cause by paying Reid 50% of the net profits for a period of one year from date of termination. For cause United could cancel the agreement without any payment to Reid. Cancellation of the agreement for cause became effective the date Reid was notified. United could cancel the agreement for cause because of violation of any company rule or regulation by Reid. Other reasons for cause are set out in the agreement but are not germane to the issues in this case.

The parties subsequently agreed that Reid would be paid $100.00 per month for overhead, including rent, lights, water, etc. United sometime later and without the consent of Reid tried to change the overhead expenses payable to Reid from $100.00 per month to 1% of the total overhead expenses of the company. This dispute culminated in a lawsuit in which Reid was awarded a judgment against United for $13,460.87 by the Circuit Court of Jefferson County. The trial judge's order was affirmed by this court. See United Security Life Ins. Co. v. Birmingham Trust National Bank et al., 282 Ala. 295, 211 So.2d 139 (1968).

The parties operated under the agreement from November, 1958 until May 19, 1967, when Reid was notified by a letter from Paul T. Carr, an agent for United, that Reid's services with the company were terminated. No reason was given. The evidence is conflicting as to why Reid's services with the company were terminated. Reid contends that he was terminated without cause. The agent, Carr, testified

that Reid had used a telephone in the office of a Mr. Hill. It is not stated in the record or briefs who Mr. Hill was. We, therefore, assume that Mr. Hill had an office in the company building. Carr testified that Reid violated a rule or regulation of the company by being in the company building in 1967 without the express personal approval of Carr.

Upon being notified that his services were terminated, Reid claimed he was due 50% of the net profits of the Credit Life Business for 12 months following his termination. He brought a suit in equity seeking to enjoin the cancellation of his employment agreement with United; to restore advances to him in the sum of $1,000.00 per month. Reid contended that he was entitled to the sum of $7,268.68 in 1966, and $89,590.59 for 1967.

United filed an answer and a cross-bill which averred that United entered into a reinsurance agreement with Trustee Life Insurance Company on August 28, 1967, whereby all of United's Credit Life Business was reinsured and transferred to Trustee Life, effective January 1, 1967. The prayer of the cross-bill prayed for a declaration of rights of Reid and the obligation of United to him.

Under the reinsurance agreement between United and Trustee Life, United transferred to Trustee Life all unearned premium reserves held as of January 1, 1967, which amounted to $307,658.49. Trustee Life paid United $150,000.00 in cash in full consideration thereof.

Reid contended that he was entitled to 50% of the $150,000.00 cash received by United from Trustee Life, claiming that such amount was profit. Reid contended that United had a profit of $189,152.18 for the period ending August 31, 1967. He has used the cash received by United from Trustee Life in arriving at his total. Claiming his 50% of the alleged profits, and subtracting advances received by him

of $4,985.50, Reid arrived at a balance due him by United of $89,590.59 for 1967.

Reid's claim of $7,268.68 for 1966 was based on alleged profit of $39,508.37, of which he was entitled to 50%, less advance by United to him in the sum of $12,485.50.

The evidence by United showed that United's profit for 1966 was $37,199.50; that Reid was entitled to 50% of that figure less advances of $12,000.00, and less other items such as supplies and licenses. The company arrived at a balance due Reid for 1966 in the amount of $5,375.58, after making the above computation.

The trial court found that Reid was entitled to receive $5,375.58 for 1966, and $905.96 for 1967, with interest at 6% per annum from January 1, 1967 as to $5,375.58 thereof, and from March 31, 1967, as to $905.96 thereof. The decree is dated September 13, 1971.

■ The trial court heard the cause and testimony was taken in open court ore tenus, and unless his decree is clearly contrary to the great weight of the evidence it will not be disturbed. Thomas v. Moon, 289 Ala. 680, 270 So.2d 811 (1972).

The principal contention of Reid was that his services were terminated without cause and therefore he was entitled to 50% of the profits of United for one year following his termination. United, of course, contended that Reid's services were terminated for cause. The largest item in dispute is whether Reid, if terminated without cause, would be entitled to 50% of the sum of $150,000.00 paid by Trustee Life to United in consideration of United's transfer of its unearned premium reserves of the Credit Life Business. It is the opinion of this court that Reid would not be entitled to any part of the sum paid by Trustee Life to United. Reid's contract was for 50% of the net profits, and the agreement defined net profits as the amount left after deducting expenses from premiums received. We interpret expenses here to

mean operating expenses of the company and premiums received as oprating income of the company.

The word "premium" in the law of insurance means the amount paid to the insurer by the insured for the insurance. Allstate Insurance Co. v. Board of Equalization, 169 Cal.App.2d 165, 336 P.2d 961 (1959); State Farm Mutual Automobile Ins. Co. v. Carpenter, 31 Cal.App.2d 178, 87 P.2d 867 (1939); Wade v. National Bank of Commerce, 144 Minn. 187, 174 N. W. 889 (1919). "Premium" has been defined as the sum which the insured is required to pay, and in its proper and accepted sense it means the amount paid to the company as consideration for insurance. 44 C.J.S. Insurance § 340 at 1302.

■ It is quite clear that the intention of the parties to the agreement was that Reid's compensation was an operating expense and was based on net profits received from premium income. If any profit or surplus resulted from the transfer of unearned premium reserves, it would belong to the stockholders. The term "unearned premium reserve" is a fund—"reserved" to meet future liabilities on policies of insurance. The term does not apply to funds to meet ordinary running expenses of the company. Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1920). Therefore, the trial court's computation of the amount due Reid for 1967 will not be disturbed.

The trial court found that Reid was due $5,375.58 for 1966 based upon the evidence before him. It was a mathematical calculation which depended on which side the trial judge believed. Our review of the record discloses no error.

The judgment is affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.