527 So.2d 665 (1988)
William Archie TEW
v.
DIXIELAND FINANCE, INC., a Mississippi Corporation.
No. 57069.
Supreme Court of Mississippi.
May 25, 1988.
*666 Dan A. McIntosh, III, Collins, for appellant.
Tommy B. Rogers, Keys & Rogers, Collins, for appellee.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Lynn Fitch Mitchell and Paul R. Knighten, Sp. Asst. Attys. Gen., Jackson, L.H. Wilson, McKinley W. Deaver, David L. Martin, Neville H. Boschert, Thomas B. Shepherd, III-Watkins, Ludlam & Stennis, J.A. Bethany, III, Jackson, for amicus curiae.
Before HAWKINS, P.J., and PRATHER and ANDERSON, JJ.
PRATHER, Justice, for the Court:
Among other questions, this appeal addresses whether a small loan company, unlicensed to sell insurance, may receive a commission on the sale of credit life and disability insurance without violation of the Mississippi statutes.
Dixieland Finance, Inc., a small loan company, filed suit against a borrower, William Archie Tew, who had defaulted on a promissory note. The borrower counterclaimed alleging that the loan company had overcharged the borrower on premium payments made on credit life and credit disability insurance. From a verdict in favor of the loan company, the borrower appeals and raises the following issues:
(1) May a small loan company solicit and sell credit life and credit disability insurance? and
(2) May a small loan company, not licensed to sell insurance, receive commissions on the sale of credit life and credit disability insurance?

I.

FACTS
Dixieland Finance, Inc. (Dixieland), a Mississippi corporation, is a small loan business licensed by the Mississippi Department of Banking and Consumer Finance and is located in Collins, Mississippi. William Archie Tew (Tew) was a customer of Dixieland and had negotiated a series of loans with Dixieland beginning in 1978.
The series of loans negotiated by Tew was the result of Mr. Tew's inability to *667 completely repay the amounts he owed. For instance, whenever Tew fell behind on his payments, Dixieland allowed Tew to negotiate a new loan and use the proceeds of the new loan to repay the former loan. Through this renewal process, Tew fell deeper and deeper into debt.
With each new loan transaction, Tew procured, through Dixieland, credit life and credit disability insurance. The purpose of this insurance was to pay off Tew's financial obligation to Dixieland if Tew died or became disabled.
During the course of its business relationship with Tew, Dixieland utilized a procedure by which it collected the credit life and credit disability insurance premiums,[1] retained fifty percent of the gross premiums as commissions, and forwarded the remaining fifty percent to the Central Life Insurance Company of Jackson, Mississippi.[2]
The final promissory note payable to Dixieland by Tew was executed March 23, 1984 and was for a principal amount of $1,626.36. The note provided for an initial payment of $119.11 followed by twenty monthly payments of $105.00. The annual percentage rate on the note was 35.32% and the total of all payments, including the finance charges, was $2,219.11.
Tew made only two payments of $105.00 each on the March 23, 1984 note before defaulting. Instead of renewing the loan as it had done before, Dixieland turned the account over to its attorney for collection. A complaint was filed January 9, 1985 in the Circuit Court of Covington County demanding a total of $2,446.19.[3] Also, an additional ten percent per annum interest rate began to accrue from the date the debt was accelerated. By the date of the trial, Tew owed $2,536.69.[4]
Tew counterclaimed alleging that Dixieland's method of retaining commissions from the sale of credit life and credit disability insurance was violative of the Mississippi Small Loan Regulatory Law codified at Miss. Code Ann. § 75-67-101 through -135 (1972 & Supp. 1987). As a result of Dixieland's alleged statutory violations, Tew claimed that he was entitled to have voided all the financial agreements, contracts, and promissory notes he had executed with Dixieland, and that he was entitled to the return of all monies, including principal, interest, and other charges paid by him to Dixieland.[5] This suit was tried July 8, 1985 and ended with a decision in favor of Dixieland for $2,536.69. From that decision, Tew perfects this appeal.
The resolution of the issues of this appeal require attention to three Mississippi statutory enactments: (1) the Small Loan Regulatory Law, Miss. Code Ann. § 75-67-101 et seq., (2) the Regulation of Agents for Life, Health, or Accident Insurers, Miss. Code Ann. § 83-17-101, et seq., and (3) Credit Life and Credit Disability Insurance, Miss. Code Ann. § 83-53-1 et seq.

II.

WAS IT ILLEGAL FOR DIXIELAND TO RETAIN COMMISSIONS FROM CREDIT LIFE AND CREDIT DISABILITY INSURANCE WRITTEN BY ITS EMPLOYEES?

A.

The Controlling Statutes
At no time during its business dealings with Tew was Dixieland a licensed insurance *668 agent. However, at all times relevant to this case, Dixieland employed insurance agents licensed to write credit life and credit disability coverage. It was the understanding of the president and employees of Dixieland that credit life and credit disability insurance could be written so long as an employee of Dixieland was a licensed insurance agent.
Also, Mr. John T. Miller, an examiner with the Mississippi Department of Banking and Consumer Finance, testified that the writing of credit life and credit disability insurance by finance companies and the receiving of commissions therefrom by the finance companies is a common practice in Mississippi. Furthermore, Mr. Miller testified the practice of small loan companies accepting commissions from the sale of credit insurance was accepted by the Department of Banking and Consumer Finance.
As mentioned, it was the practice of Dixieland to retain as its commission 50% of the insurance premiums. All, or a large portion, of the retained commission went to Dixieland, not to the licensed insurance agents employed by Dixieland. Tew contends Dixieland's commission procedure was illegal.
The statutory scheme regulating agents for life, health or accident insurers is Miss. Code Ann. § 83-17-101 through -135 (1972 & Supp. 1987). Miss. Code Ann. § 83-17-101 (Supp. 1987) defines the term "agent" as including "all individuals, partnerships, and any corporation ... who act in any manner, directly or indirectly, as such in the solicitation of, negotiation for, or procurement or making of a contract of life, health or accident insurance... ."
Furthermore, Miss. Code Ann. § 83-17-105 (Supp. 1987) prohibits acting as an insurance agent without a license and also prohibits the payment or acceptance of insurance commissions to and by those not licensed as insurance agents. Section 83-17-105 reads:
No person shall act as an agent within this state until he shall have procured a license as required by the laws of this state, and until he shall hold a certificate of authority from at least one (1) company authorized to write the line of business provided in said agent's license.
* * * * * *

No insurer or agent doing business in this state shall pay, directly or indirectly, any commission or any other valuable consideration to any person for services as an agent within this state unless such person shall hold a currently valid license and certificate of authority to act as an agent, as required by the laws of this state. Nor shall any person other than a duly licensed agent accept any such commission or other valuable consideration. The provisions of this section shall not prevent the payment or receipt of renewal or other deferred commission to or by any person solely because such person has ceased to hold a license to act as an agent; and the provisions of this section shall not prevent the payment or receipt of any commission or any other valuable consideration to or by a person who has applied for a temporary license pursuant to section 83-17-119. [Emphasis added.]
Another statute that may appear to be applicable to the instant case is Miss. Code Ann. § 83-17-229 (Supp. 1987), which reads in part:
[T]he employees or officers of a lending institution or a holding company, or the subsidiary or affiliate of a lending institution or holding company, may be licensed to sell credit life, health and accident insurance for and on behalf of his employer in accordance with regulations promulgated by the insurance commissioner.
Section 83-17-229 presents no problem to the resolution of the instant case because Dixieland is not a "lending institution" as that term is defined in Miss. Code Ann. § 83-17-227 (Supp. 1987).[6]
The representatives of Dixieland readily testified that Dixieland was not a licensed insurance agent but that it did receive commissions *669 for the sale of credit life and credit disability insurance.[7]

B.

Private Right of Action
The penalty for violating § 83-17-105 is found in Miss. Code Ann. § 83-17-133 (1972):
Any person who shall violate any of the provisions of this article shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than ten dollars ($10.00) nor more than five hundred dollars ($500.00); and the commissioner or any court of competent jurisdiction wherein a proceeding under section 83-17-123(3) has been initiated by the commissioner, may suspend or revoke any license hereunder. If the same agent be found guilty of a second offense under this article within twelve (12) months of the imposition of a lesser penalty, then revocation of license of said agent by the commissioner or by court action, as provided for hereunder, shall be mandatory.
Section 83-17-133 provides for a criminal penalty and for action by the Insurance Commissioner. It does not specifically provide for a private right of action.
However, this question has been resolved in favor of the plaintiff in the recent cases of this Court wherein a private right of action was permitted by a party claiming a direct, adverse effect as a result of alleged misconduct. Dye v. State Ex Rel. Hale, 507 So.2d 332, 338, (Miss. 1987); Frazier v. State of Mississippi, 504 So.2d 675, 691-92 (Miss. 1987); Canton Farm Equipment Inc. v. Richardson, 501 So.2d 1098, 1105-09 (Miss. 1987).
In a case very similar to the action at bar, Consumers Credit Corp. v. Stanford, 194 So.2d 868 (Miss. 1967), a lender sued the borrower to recover the balance due on a note, and the defendant was permitted to affirmatively defend by claiming the borrower allegedly violated the statutory directions of the Small Loan Regulatory Act.
Tew likewise claims an alleged violation of the statute with reference to a loan transaction that directly and adversely effects him. Under the authority of Stanford, supra, and the Court's aforenamed more recent decisions, this Court upholds a private right of action in favor of Tew. See also Bailey v. Defenbaugh & Co. of Cleveland, Inc., 513 F. Supp. 232, 244 (N.D. Miss. 1981).
Likewise, this interpretation is analogous to and in accord with the federal Truth-in-Lending Act, 15 U.S.C. §§ 1601-1646, which is one part of the Consumer Credit Protection Act. Such legislation provides for private enforcement of substantive rights granted by consumer credit legislation because of the immense task of public enforcement agencies at both the federal and state level to police compliance of the statutes and regulations. 1 J. Fonseca, Handling Consumer Credit Cases § 14:1 et seq. (3d ed. 1986). The debtor's remedy is in the form of a defense to any offensive part of his obligation.

C.

Was Dixieland's Receipt of Commissions Violative of the Statute, Miss. Code Ann. § 83-17-105?
This Court recognizes that credit life insurance is a unique product within the insurance field. It is a form of insurance sold in connection with loans or extensions of credit procured at the time the loan is made for a relatively small amount of insurance.[8] Its marketing methods for *670 sale are such that the creditor offers the borrower the insurance rather than a full-time general insurance agent. However, a creditor cannot be licensed as an agent to write credit life and disability insurance if the creditor is a corporation. Miss. Code Ann. § 83-17-101(a) (Supp. 1987) allows only "individuals, partnerships, and any corporation incorporated pursuant to Title 79, Chapter 9, Miss.Code of 1972, being the Mississippi Professional Corporation Law" to be licensed as an agent to write credit life and disability insurance. Furthermore, the Department of Insurance has recognized that "there is no provision in the statutes of this State for the licensing of any corporate agency... as an agent pertaining to life and health and accident insurance." Mississippi Insurance Department Regulation No. L A & H 74-2. Accordingly, the Department of Insurance cannot license a corporate creditor to write credit life and disability insurance.
Nevertheless, it has long been recognized in Mississippi that a corporate creditor is entitled to receive a commission for the sale of credit life and disability insurance. Effective February 25, 1969, the Department of Insurance issued a regulation to prohibit creditor group policyholders or agents from withholding a commission in excess of fifty percent of the insurance premium paid by the borrower. Either a similar regulation or statute has been in effect since. Mississippi Insurance Department Regulation No. L A & H 82-102, Section VII states:
No insurance company shall pay, credit or otherwise allow any compensation or other valuable consideration, either directly or indirectly to any creditor or agent for the sale of any policy, certificate or other contract of credit insurance which exceeds fifty percent (50%) of the premium rates specified for such policy, certificate or contract. [Emphasis added.]
This recognition that creditors can receive compensation for the sale of credit life and disability insurance was codified by the Legislature in Miss. Code Ann. § 83-53-25 (Supp. 1986) which regulates the commission that a creditor can receive for the sale of credit life and disability insurance. Section 83-53-25 provides:
(1) No one shall pay, accrue, credit or otherwise allow, either directly or indirectly, any compensation to any creditor, person, partnership, corporation, association or other entity in connection with any policy, certificate or other contract of credit life insurance or credit disability insurance which exceeds fifty percent (50%) [45% from and after July 1, 1987] of the premium rates approved for such policy, certificate or contract. [Emphasis added.]
*671 By virtue of these regulations and statutes it is apparent that the Legislature and Department of Insurance have recognized that creditors may, and that many in fact do, receive commission payments from the sale of credit life and disability insurance.
However, regulations ignore the inconsistency of the provisions with Miss. Code Ann. § 83-17-105 (Supp. 1987) which prohibits the payment of any commission to any person who is not a licensed agent. This Court therefore holds that the receiving of such commission by Dixieland from its sale of insurance is in violation of the Miss. Code Ann. § 83-17-105 requiring him to be a licensed agent to receive commissions.

III.

DID DIXIELAND OVERCHARGE TEW ON PREMIUMS FOR CREDIT LIFE AND CREDIT DISABILITY INSURANCE?
At the time Tew executed the March 23, 1984 promissory note, the maximum rates for credit insurance were regulated by the Commissioner of Banking and Consumer Finance[9] under the statutory authority of Miss. Code Ann. § 75-67-121 (1972) and Miss. Code Ann. § 76-67-129 (1972). In addition, by regulation of the Mississippi Insurance Commissioner, companies selling credit insurance were allowed to pay their agents no more than 50% of the insurance premiums as commissions.
Effective May 1, 1986, the maximum rates for credit life and credit disability insurance are regulated by Miss. Code Ann. § 83-53-23 (Supp. 1987) and the limitation of compensation to agents selling credit insurance is set by Miss. Code Ann. § 83-53-25 (Supp. 1987).[10]
Dixieland did not require each borrower to buy credit insurance, but made credit insurance available for those who wanted it. As previously mentioned, Dixieland's practice was to collect the credit insurance premiums, keep 50% of the premiums, and forward the remaining 50% to Central Life Insurance Company of Jackson. It is undisputed that the entire premium collected by Dixieland was always in compliance with the maximum premiums prescribed by the comptroller.
Tew contends that Dixieland was authorized to charge for credit insurance only the amount Dixieland actually paid for the insurance. In other words, Tew contends Dixieland could only charge its customers the actual cost of the insurance to Dixieland.
As authority, Tew cites Miss. Code Ann. § 75-67-121 (1972), which reads in part:
Any licensee hereunder may charge any borrower on loans of one hundred dollars ($100.00) or more ... the actual cost of any premium paid for life, health and/or accident insurance on any borrower where the amount of insurance required is not in excess of the amount of the loan and the premium therefor is in keeping with that usually and customarily paid for like insurance. [Emphasis added.]
Therefore, this Court must determine whether a licensee under Miss. Code Ann. § 75-67-121 (1972)[11] of the Small Loan Regulatory Law may charge the maximum prescribed rates, including commissions, or whether the licensee may only charge the cost of the insurance to the licensee.

A.

Private Right of Action
A preliminary issue to be addressed under this assignment of error is whether Tew may pursue a private right of action for the violation he alleges under the Small Loan Regulatory Law. This Court holds that he may.
*672 The Small Loan Regulatory Law (§§ 75-67-101 through -131) provides in Miss. Code Ann. § 75-67-111 (1972) a 24-month statute of limitations for "[a]ny suit brought against a licensee by any person." (Emphasis added.)
The language of § 75-67-111 clearly contemplates a private right of action. See also Bailey v. Defenbaugh & Co. of Cleveland, Inc., 513 F. Supp. 232, 240 (N.D.Miss. 1981) (Pursuant to Mississippi Small Loan Regulatory Act, a private right of action existed in favor of borrowers to recover against loan company for violations of Act.)

B.

"Actual Cost of any Premium"
As authority for his proposition that "actual cost of any premium" means only the amount Dixieland had to pay for the credit insurance, Tew cites Bailey v. Defenbaugh & Co. of Cleveland, Inc., 513 F. Supp. 232 (N.D.Miss. 1981). Bailey is analogous to the instant case in that borrowers from a small loan company procured credit insurance through the loan company, which retained 50% of the insurance premium as a commission. The United States District Court, Northern District of Mississippi, exercised jurisdiction to construe Mississippi law pendant to its jurisdiction under the federal Truth in Lending Act. The Court in Bailey held that the loan company was limited to charge only the amount it actually paid for the insurance.
Section 75-67-121 not only allows a licensee to charge the actual cost of any premium paid for credit insurance, it requires "the premium therefor [to be] in keeping with that usually and customarily paid for life insurance." (Emphasis added.) At the time Tew executed the March 23, 1984 note, the maximum rates for credit insurance were regulated by the comptroller. Furthermore, John T. Miller, an examiner with the Department of Banking and Consumer Finance, testified it was the custom and practice of sellers in Mississippi to charge the maximum amount for credit insurance.
The word "premium" is not defined in the Act. Nevertheless, it is almost universally understood that an insurance premium paid includes the commission. The Supreme Court of Alabama recently addressed a similar issue under the Alabama small loan laws to determine whether a creditor could retain the commission portion of the insurance premium paid by the borrower for credit insurance. Because the word "premium" was not defined by statute, the Court looked to the common law to determine its meaning. The Court stated:
In Reid v. United Security Life Ins. Co., 290 Ala. 253, 256, 275 So.2d 680 (1973), the Court defined "premium" as "the amount paid to the insurer by the insured for the insurance," and the Court added, "`Premium' has been defined as the sum which the insured is required to pay, and in its proper and accepted sense it means the amount paid to the company as consideration for insurance." Thus, because it is a cost of procuring the insurance, a premium may include the commission paid to the seller of the seller of the insurance. [emphasis added].
Spears v. Colonial Bank of Alabama, 514 So.2d 814, 816 (Ala. 1987) (emphasis added). See also 2A Sutherland Stat. Const. § 50.03 (4th ed. 1984). Because the commission retained by the creditor in Spears was part of the cost of the insurance premium charged to the borrower and the insurance premium was within the amount allowed to be charged, the Alabama Supreme Court found there was no violation of the Alabama small loan law.
This same principle is applicable to the Mississippi Act as both the industry and the Department of Banking have always considered the "premium" to include the commission. Well-settled rules of statutory construction support the interpretation by the industry.
For those reasons, this Court holds a licensee under § 75-67-121 may legally charge premiums up to the statutorily regulated maximum regardless of the commissions the licensee receives from the insurance *673 company. The statute allows a licensee to collect the total cost of the premiums, not just the cost of the premiums less any commission the licensee receives.
In making its decision, this Court approves the regulations promulgated by the Commissioner of the Department of Banking and Consumer Finance. Specifically, Regulation 2(i) states, "The actual cost of any premium paid for insurance whether property, accident, or life shall mean the total premium due for any such insurance coverage as authorized by these regulations." (Emphasis added.) Also, Regulation 8(b), effective July 24, 1986, states, "The premium for [credit life and credit disability] insurance, including any commission paid or retained by licensees that complies with Chapter 440, Mississippi General Law of 1986 (codified at Section 83-53-23 et seq., Miss.Code of 1972, as amended) is a part of the amount financed."
For all the reasons outlined above, this Court construes Miss. Code Ann. § 75-67-121 (1972) to allow licensees thereunder to charge the maximum premium rates for credit insurance regardless of the commissions paid to the licensees by the insurance company.

IV.

DID THE COURT ERR IN FINDING IN FAVOR OF DIXIELAND?
Tew admitted at trial that he had not paid the note sued upon in this action. Other testimony clearly establishes that there was due and owing at the time of the entry of the judgment in this cause by Mr. Tew to Dixieland of a total sum of $2,536.69 together with all costs of court, plus interest thereon from the date of said judgment. The evidence being uncontradicted, this Court holds that the trial court committed no error in finding in favor of Dixieland on the question of the alleged overcharge violation of § 75-67-121.

V.
Additionally, the trial court held that the collections of commissions by Dixieland was done in good faith based upon the existing Department of Banking and Consumer Finance Regulations and the testimony of John T. Miller. Because of this good faith reliance, the actions of Dixieland were held not to violate the Small Loan Regulatory Law, § 75-67-101 et seq., because of the protection of the "accidental or bona fide error" exception in § 75-67-119. This Court affirms this action regarding the judgment against Tew from this date.

CONCLUSION
This Court's conclusions may be summarized as follows:
(1) Dixieland violated Miss. Code Ann. § 83-17-105 (Supp. 1987) by acting as an insurance agent without a license and by accepting commissions from the sale of credit life and credit disability insurance.
(2) Miss. Code Ann. § 83-17-133 (Supp. 1987), which prescribes the penalties for violations of § 83-17-105, does not prohibit a private right of action in favor of Tew.
(3) Dixieland did not violate Miss. Code Ann. § 75-67-121 (1972) by overcharge on the sale of credit life and credit disability insurance.
(4) Dixieland should be allowed to recover its award of $2,536.69 plus accrued interest.
However, this Court must address the conflict existing between the statutes and the insurance regulations while at the same time recognizing the sanctioned practices that are widespread in the credit insurance industry. Because of the reliance placed on the Department of Insurance regulations, this Court holds that the mandate of this opinion prohibiting an unlicensed agent from collecting commissions shall be prospective, effective on and after July 1, 1989, to permit the Legislature and Executive Departments to adjust to this decision. See Smith v. Dorsey, 530 So.2d 5 (Miss. 1988); Alexander v. State By and Through Allin, 441 So.2d 1329 (Miss. 1983); Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982).
AFFIRMED.
*674 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] At all times Dixieland employed personnel duly licensed to sell credit life and disability insurance.
[2] For explanation purposes, this process has been simplified. In reality, adjustments were made to the insurance premiums when there was prepayment or renewal of a loan.
[3] Accelerated balance less unearned
 finance charge $1,834.64
 Attorney's fee 611.55
 _______
 $2,446.19

[4] Original accelerated balance
 plus attorney's fee $2,446.19
 Additional interest 90.50
 ______
 $2,536.69

[5] Miss. Code Ann. § 75-67-111 (1972) provides for a 24-month statute of limitations under the Small Loan Regulatory Law. Therefore, only the promissory notes executed within the statute of limitations are considered on this appeal.
[6] Section 83-17-227 defines "lending institution" as "any bank or savings and loan."
[7] Central Life Insurance Company, the company that paid Dixieland its commissions, is not a party to this suit, and its situation is not addressed.
[8] Credit Life Insurance has been described as follows:

Credit life insurance is designed to protect the lender. In the event the borrower dies, the insurance company will pay the outstanding obligation and discharge the obligation. Ordinarily credit life is sold as group insurance in transactions that do not involve real estate. The policy is issued to the lender, not the borrower, and the insured group is designated as those consumers who borrow money from the lender. The lender, as policyholder, pays the premium, but most lenders pass the cost on to the consumer.
In most instances the purchase is an unwise investment for the consumer. The cost of the insurance is high; the profit for the banks is great. The banks earn substantial income from the sale of this insurance. The cost of the insurance is high because of "reverse competition." Reverse competition refers to the competition between insurance companies to offer the most expensive policies rather than the least expensive. Creditors prefer the former because the higher the premium, the greater the creditor's profit. In addition, the cost of the total premium is charged up front, but the consumer pays the premium in installments, incurring a finance charge on the insurance premiums as well as on the loan principal. Because there is no individual underwriting, everyone is charged the same rate regardless of age or life expectancy. Thus, the insurance is more costly for younger borrowers than for older and more costly for women than for men. Many consumers purchase unneeded coverage. They already are adequately insured, or if they die, the unpaid debt will not adversely affect anyone except the bank. If they do need or want insurance protection, purchasing regular long-term life insurance from an independent agent provides greater coverage at a more economical rate.
If credit life insurance is an unwise purchase, why do almost all borrowers obtain it? Many are not even aware they have bought it because it is sold as part of a loan package. Others believe it is required although usually it is not. Still others mistakenly believe it is a sound investment. The cost per month is quite small and since it is incidental to the loan, which is their principal focus of attention and concern, they do not engage in comparative shopping to determine its true value. Budnitz, The Sale of Credit Life Insurance: The Bank as Fiduciary, 62 N.C.L.Rev. 295, 297-98 (1984).
[9] Also known as the "comptroller."
[10] Miss. Code Ann. § 83-53-1 through -47, enacted in 1986, serves the purpose of promoting the public welfare by regulating credit life and credit disability insurance.
[11] The Court notes that Dixieland itself was not licensed to write insurance. That situation is discussed in section II.