6 So.2d 473

**JEFF D. JORDAN & CO. v. YANCEY & ABERNATHY.**

7 Div. 692.

Supreme Court of Alabama.

Feb. 12, 1942.

Rehearing Denied March 12, 1942.

Irby A. Keener, of Center, for appellants.

Rains & Rains, of Gadsden, and Reed & Reed, of Centre, for appellees.

386

THOMAS, Justice.

The suit was for work and labor and for damages for breach of a contract between the parties. Demurrer to the complaint being overruled, pleas of the general issue, for breach of contract for non-compliance of the terms and condition thereof and set off and recoupment, were filed.

Upon the trial the issues of fact were submitted to the jury and there was judgment for plaintiff from which this appeal is taken.

The appellants were engaged in business under the name and style of the partnership indicated and were the owners of a lot upon which there was a well used by them to supply water for their places of business. That water supply being insufficient, the defendants to increase that supply contracted with the plaintiffs' firm, the owners of certain well drilling machinery, who were then engaged in drilling wells for the general public, to fix the well under the terms and conditions stated in the testimony of the parties.

The substance of the contract was that appellants were to furnish all the necessary gas and oil for the operation of said well drilling machinery, to furnish board to operators thereof, to furnish casing for the well to be drilled and that appellees (plaintiffs) on their part were to drill the well referred to to a depth necessary to cause "everlasting water to rise up and stand in said old well" in which the new well was to be sunk; and in that event appellants were to pay appellees, in addition to gas, oil and the board indicated, the sum of $1.50 for each foot drilled; and that appellees failing to obtain water in a sufficient quantity to rise and stand in the old well indicated were to receive no pay for drilling therein for them other than for the said gas, oil and board furnished during such operation.

It is without dispute that nothing was said by either party at the time of entering into the contract about the size, kind or amount of casing to be furnished by appellants to be used by appellees in the sinking of said well to water or in the effort to secure the same.

After the entering into of this agreement or contract, appellees began drilling and appellants began furnishing gas, oil and lodging for the drilling operation. When the depth of five hundred feet had been reached, appellees advised appellants that the well was caving in and that they would have to have casing to insert therein. The size of the casing to be bought was discussed by the appellants and the appellees and 507 feet 8 inches of 6¼ inch casing (inside measurement), or 6⅝ inch casing (outside measurement) was bought and delivered at the well site by the appellants for the use of appellees in placing the same in the well and proceeding with the drilling.

Appellees say that at this time they requested of appellants 8 inch casing, and told them that it would probably be necessary to use three separate strings of casing, extending from the top to the bottom of the well, and to this suggestion the appellants replied by refusing to buy the eight inch casing requested, but did agree with appellees to buy 6¼ inch casing in order that two strings of casing might be placed in the well.

On the other hand, appellants' testimony tended to show that when appellees' agent Mr. Abernathy asked for the casing nothing was said about eight inch casing, but that he asked for 6¼ inch casing and stated that it might be necessary to put two strings of casing in the well, but that appellants' agent Mr. Paul Jordan at that time, and before any casing had been purchased, advised appellees that he would not buy two strings of casing for the well, but that he would buy all the casing that he needed in either size (6¼ inch or 5¼ inch casing), and that appellee acceded to the suggestion and "told him that he wanted the 6¼ inch casing."

Appellees' testimony tended to show that after said 6¼ inch casing had been purchased and placed in said well, they proceeded with the drilling until they reached a depth of 1,050 feet, when they again advised Mr. Jordan of the necessity for additional casing. Before such additional casing was purchased and a short time after said request, Mr. Archibald, a salesman for Moore-Handley Hardware Company, came to appellants' store, and Mr. Paul Jordan sent for appellees' Mr. Austin Abernathy, and told him to tell Mr. Archibald what he wanted in the way of casing to proceed with the drilling; that the appellees then asked for 600 feet of 6¼ inch casing, a well cap and a well

shoe, all of which was purchased by the appellants through Mr. Archibald from the Moore-Handley Hardware Company for use in said well, and was delivered on the ground where said well was being drilled; that the appellees then made an effort to pull out the 500 feet of casing theretofore placed therein in order that the drive shoe might be placed thereon and the casing driven further down, and that failing to pull this casing out of the well, the appellees (plaintiffs) stopped the drilling and removed their machinery from off appellants' property.

Such were the divergent conditions of fact that were presented to the jury and upon which the jury's verdict was rendered against the defendants Jordan.

■ Several principles of law have been established in this jurisdiction. Forfeitures may be waived by persons entitled to enforce them, but after a party has acquiesced in a breach of contract, he cannot thereafter urge a forfeiture because of such breach. 13 Corpus Juris, p. 609, § 645; 17 C.J.S., Contracts, § 409.

■ It is further established that an election to treat a broken contract as efficacious is final. Lowy et al. v. Rosengrant, 196 Ala. 337, 71 So. 439; McAnelly Hardware Company v. Bemis Bros. Bag Company, 208 Ala. 394, 94 So. 567; Lavretta et al. v. First National Bank of Mobile, 235 Ala. 104, 178 So. 3.

■ It is, however, recognized that parties to an executory contract may alter it at their pleasure and in any lawful way that they see fit upon no other consideration than by mutual consent. 2 Mayfield's Digest, p. 797, § 48; Dunaway v. Roden, 14 Ala.App. 501, 71 So. 70.

■ It is further established that when the terms of the original contract are undisputed and were thereafter altered or changed by the mutual agreement of the parties and the extent of that modification only was in dispute, it is clearly "a question for the jury to determine." Swanner v. Swanner, 50 Ala. 66.

The disinterested witness placed upon the stand was Mr. Archibald, the salesman for the Moore-Handley Hardware Company, who said in substance that he sold the Jordans casing for the well on two different occasions that amounted to 500 feet of 6⅝ inch steel casing (outside measurement, 6¼ inch inside measurement); that Mr. Abernathy of plaintiffs' firm was present at the time he made the sale; that Mr. Jordan wanted 500 feet of 6⅝ inch well casing; that Mr. Abernathy was present and "if he said anything about the size of the casing at the time," the witness did not recall it, and that the casing was shipped out to Jordan which was installed in the well; that "Paul Jordan and Abernathy were present when I made the second sale. Jordan asked Abernathy how much he needed and he said about 600 feet of 6⅝, also a drive shoe and drive cap. I asked Abernathy to explain to me what a drive shoe and drive cap was, I was not familiar with those items. He told me a drive shoe was to screw on and use as a cutter, and the drive cap was to put on top to drive against. They were in a hurry for this and I was going to phone the order in. I asked Abernathy to go to the telephone office to call Moore-Handley in Birmingham. He went and stayed with me while I made the call to Birmingham, and was present at the time I gave the order. I am familiar with the price of casing such as I sold the Jordans and the drive shoe and cap, and in my judgment 86.89 cents per foot was the value of the 500 feet of casing sold the Jordans and also of the 632 feet sold the Jordans."

On cross-examination the witness testified: "All I heard was the ordering of the casing I did not hear Abernathy tell Jordan we need 5 inch but know we are not going to get it. I never heard Jordan tell Abernathy or Yancey that he was not going to get but one kind of casing."

Mr. Paul Jordan, one of the plaintiffs, being recalled, testified that: "These are the invoices I got for the casing bought and they were paid by me, Abernathy did not say anything further to me about getting different size casing after they had made this attempt to pull that pipe."

The record recites that: "Here the defendants rested."

Mr. Austin Abernathy, one of the plaintiffs, being recalled further testified that he went back to Jordan for casing the second time and did not tell Paul that he wanted five inch casing "but knew I (witness) was not going to get it. My machine was not in low gear the last few days we drilled before the well fell in. It was in second gear." He testified further that the type of machinery being used, considering the formation they were going through, would have drilled 1,800 or 2,000 feet further down; that after "we failed to pull the

388

casing, I asked Paul to trade the 6¼ that he had on the ground in for 5 inch casing, and we then could go ahead and proceed drilling, he didn't do it. When I could go no further, I made demand for payment of $1.50 a foot. He refused to pay it and has refused to this day." On cross-examination the witness further testified: "We did not use a 2x4 to brake the machine because it would not hold at that depth, we used the 2x4 on the bailer to brake the machine."

The evidence presented a jury question as to the failure in contract duty vel non in the purchasing and furnishing of the last casing. That duty rested on the defendants. There was no effort to exchange the casing on the ground for 5 inch casing as suggested by the appellees. We cannot say under our rules (Cobb v. Malone, 92 Ala. 630, 9 So. 738; Nashville, Chattanooga & St. Louis Ry. v. Crosby, 194 Ala. 338, 70 So. 7) that the motion for a new trial should have been granted. It results that the judgment of the circuit court should be and it is hereby affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.