276 So.2d 569

George H. KINMON, Sr. and Mrs. George
H. Kinmon, Sr.

v.

J. P. KING AUCTION COMPANY, INC.,
a corporation.

SC 181.

Supreme Court of Alabama.

April 19, 1973.

Chason, Stone & Chason, Bay Minette, for appellants.

James R. Owen, Bay Minette, for appellee.

FAULKNER, Justice.

This case is the tale of "Bittersweet." Bittersweet is a home in Perdido Beach, Alabama, not far from the Gulf Coast of our fair State. On the property along Soldier Creek are a main house, a cabin, three mobile homes, a boathouse, a concrete fish pond, and other features and attractions spread among the pine trees.

On July 29, 1971, George H. Kinmon, the owner, signed a contract with J. P. King Auction Company (King) to sell the property "for the highest price obtainable." Kinmon testified to having "conveyed" to the representatives of King that he expected to realize $103,500 for the property. The latter told Kinmon that Bittersweet would bring what it was worth the day of the sale. The written contract did not incorporate any guaranteed minimum price, referring merely to "the highest price obtainable."

King prepared and distributed a brochure announcing the "absolute auction" of Bittersweet:

"This is the place for your Vacation Home or Company Lodge, plenty of room for sleeping and entertaining on Beautiful Soldier Creek just a few minutes by boat to Alabama Point and on out into the Gulf for some of the best fishing in the world. Enjoy swimming and skiing just from your own boathouse or just plain fishing from the pier. There is everything to enjoy at 'Bittersweet.'

"Let Today's Investment Be Tomorrow's Security.

"YOUR PRICE IS OUR PRICE."

Kinmon, concerned about the possibility of not realizing an adequate price for his property, protested against the inclusion of the terms "Your Price is Our Price" and "absolute auction." However, preparations for the auction continued. Signs announcing the forthcoming auction and stating "Your Price is Our Price" remained undisturbed by Kinmon.

On August 21, 1971, the day of the auction, Kinmon was "upset." He told King's secretary that he wasn't signing anything. At one point during the bidding, Kinmon went up to King and stated that if Bittersweet did not bring $70,000, "I will take you to Supreme Court." King went ahead with the bidding and sold the property to the highest bidder for $35,000. Kinmon subsequently refused to convey the property or pay King's commission. King sued, and the Circuit Court of Baldwin County held that he was entitled to his commission. Kinmon appeals from this decree.

 A citizen of Alabama is free to contract in any way he sees fit. There is no doubt Kinmon and King could have written a $50,000, $70,000, or $100,000 minimum price for Bittersweet into their auction sale contract. They did not do so. The contract recites that Bittersweet would be sold "for the highest price obtainable." Kinmon may have wished or hoped that the sale would realize $100,000. However, it is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation. Todd v. Devaney, 265 Ala. 486, 92 So.2d 24 (1957).

 Contracting parties are free to modify their contract by mutual assent. Mogul Wagon Co. v. Shotts, 18 Ala.App. 528, 93 So. 219 (1922). After expressing discontent with the advertised slogan "Your Price is Our Price," Kinmon could have asked King to insert a minimum price

guarantee into the contract. He did not do so. Unilateral grumbling cannot modify a bilateral contract.

 It is the general rule that the agency to sell at auction, whether such auction be "with reserve" or "absolute," may be withdrawn at any time prior to the opening of bids. Benjamin v. First Citizens Bank, 248 App.Div. 610, 287 N.Y.S. 947 (1936). This withdrawal of authority must be clear and unequivocal. Nowhere in the record is there evidence that Kinmon clearly and unequivocally stated that he no longer wished King to sell his property, that he was revoking King's authority, that he was withdrawing Bittersweet from sale. Being "upset" is not enough; threatening to take King to court if $70,000 were not realized is not enough.

Appellant contends, however, that the employees of King violated their trust as agents of Kinmon, and were guilty of acting in bad faith.

 We have repeatedly stated that where the chancellor has heard testimony ore tenus, this Court will affirm unless the decree is clearly contrary to the great weight of the evidence. Reid v. United Security Life Insurance Co., 290 Ala. 253, 275 So.2d 680 (1973); Thomas v. Moon, 289 Ala. 680, 270 So.2d 811 (1972). We think that the court below could reasonably conclude that King acted in good faith. King may have thought that Kinmon was unduly optimistic in hoping to receive $103,500 for Bittersweet; on the other hand he testified to having recently sold for $50,000 a property he thought would not bring in more than $20,000. Far from profiting from the lower sale price realized, King suffered a loss of thousands of dollars because his commission was a percentage (15%), rather than a fixed amount.

 We think that a finding of bad faith would require a showing of some element of dishonesty or self-dealing on the part of King. It appears that the trial

court found neither in this case. At most, it could be concluded that King was eager to persuade Kinmon to go through with the deal. This being the situation, Kinmon, as a mature business man, had the option of terminating or seeking modification of the agreement, if it were unsatisfactory to him. He chose to do neither.

The decree of the Circuit Court of Baldwin County must be and is affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, and MADDOX, JJ., concur.