310 So.2d 885

**JOHNSON–RAST & HAYS, INC., a corporation, et al.**

**v.**

**Sarah Grant COLE.**

**SC 815.**

Supreme Court of Alabama.

April 3, 1975.

Gilbert E. Johnston, Sydney L. Lavender, John D. Quenelle, Birmingham, for appellants Cherokee East Corp., J. Hamilton Perkins, Jr., M. Vann Perkins, Ted A. Holder, H. M. Davis, Jr., John B. Davis, Gerald A. Drennan, Felix A. Drennan and Preston H. Haskell, Jr.

John P. McKleroy, Jr., Birmingham, for appellant Johnson-Rast & Hays Co.

Whitmire, Morton & Coleman, Birmingham, for appellee.

ALMON, Justice.

Complainant filed a bill in equity seeking a declaratory judgment construing an option contract with amendments. The prayer was for $50,000.00 plus interest as damages for breach of contract. The evidence was heard *ore tenus* without a jury and judgment was rendered in favor of the complainant.

While suit was in progress in the trial court, the Alabama Rules of Civil Procedure became operative. Thus, we shall refer to complainant as plaintiff and respondents, appellants here, as defendants.

The situation which gave rise to the controversy was that Cherokee East Corporation was developing an apartment complex and the stockholders of the Corporation were desirous of selling the complex when completed. The plaintiff was interested in purchasing the complex. It was contemplated that the future sale would be accomplished by selling the stock rather than by conveying the real estate by deed. The defendants, with the exception of Preston H. Haskell, Jr., and the Corporation itself, were the owners of all the stock of Cherokee East Corporation.

In December of 1969 the plaintiff entered into an "option to purchase stock" contract with the stockholder defendants. Pertinent portions of that contract are as follows:

"Upon payment of a Fifty Thousand Dollar ($50,000.00) deposit by the Buyer to Gerald A. Drennen, as agent for the Sellers, upon execution of this Agreement, the Buyer shall have the right, option and privilege of purchasing One Thousand (1,000) shares of the capital stock of the Company from the Sellers and in the amounts as follows: . . .

"The above Sellers agree to sell said stock owned by them respectively and the Buyer agrees to purchase said One Thousand (1,000) shares upon the Buyer exercising said option within sixty (60) day option period as hereinafter provided, and in compliance with the terms and provisions of this Agreement.

"The Buyer's option shall be effective upon the date of this instrument and shall terminate sixty (60) days after written notification from the Sellers, or their agent, to the Buyer that the Metropolitan Life Insurance Company, or other purchaser, has purchased the mortgage loan (on the real estate, referred to as Parcel I in Exhibit A attached hereto), in the principal sum of $1,050,000.00 or $1,250,000.00, as the case may be, which loan is the subject of that certain commitment from the Charter Mortgage Company and the Metropolitan Life Insurance Company, a copy of which commitment is attached hereto as Exhibit B. Such notification shall be given the Buyer within ten (10) days following the purchase of the loan. If, for any cause or reason, the loan has not been purchased by June 30, 1971, this Agreement shall thereupon become null and void, and the $50,000.00 deposit shall be returned to the Buyer; provided, however, that if by June 30, 1971, the loan has not been purchased, the Sellers, or their agent, shall, within ten (10) days thereafter, give written notification to the Buyer and she shall have sixty (60) days after such notification within which to exercise the option to purchase said capital stock, notwithstanding that the loan has not been purchased.

"The Buyer shall exercise the option, if at all, by written notification to the said Gerald A. Drennen (or to such other person as the Sellers may designate in writing) prior to the expiration of the applicable sixty (60) day period hereinbefore prescribed. In the event the Buyer exercises the option as herein provided, said $50,000.00 deposit shall be credited against the purchase price for said stock and applied to the payment

due thereon at the closing of the sale thereof. If the Buyer fails to exercise the option within the time and in the manner herein prescribed after notification to her that said loan (either in the principal sum of $1,050,000.00 or $1,250,000.00) has been purchased, said $50,000.00 shall be forfeited to the Sellers as liquidated damages, whereupon this Agreement shall become null and void. In the event of default hereunder by the Sellers (which default is not cured within thirty (30) days after notification by the Buyer to the Sellers of its occurrence), or if the said $1,050,000.00 loan or, as the case may be, the said $1,250,000.00 loan, is not purchased by the Metropolitan Life Insurance Company, or other purchaser, by June 30, 1971, said $50,000.00 deposit shall be returned to the Buyer and this Agreement shall be null and void, unless, as herein provided, the Buyer elects to purchase said 1,000 shares of stock, notwithstanding such default or failure to purchase said loan. . . ."

The permanent financing was to be accomplished by a loan from Metropolitan Life Insurance Company to Cherokee East Corporation. The amount of the loan commitment varied from $1,050,000.00 to $1,250,000.00. The purpose of this variation was that if the percentage of occupancy of the apartment units increased, the amount of the loan would be increased. This formula was set out in detail in the contract.

The occupancy factor did not increase as anticipated. In an effort to give the business venture more time and to possibly increase the occupancy thus increasing the amount of the loan, the following amendment to the contract was negotiated:

"Mr. Jerry Drennen November 17, 1970 Agent for Sellers

"Dear Jerry:

"This letter agreement amends and supplements the Option to Purchase Stock dated December, 1969, wherein you are Sellers and I am designated Buyer, which option covers all of the stock of Cherokee East Corporation.

"In the event the terms and conditions of this letter agreement meet with your approval please so indicate by signing the acceptance provided below.

"We agree to the following amendments:

"1. *You agree to close the floor loan of $1,050,000.00 with Metropolitan Life Insurance Company on December 22, 1970.*

"2. You agree to obtain a five month extension from Metropolitan Life Insurance Company so that the remaining balance of the loan of $200,000 shall be funded, if the rental achievement as specified in the commitment has been reached by May 22, 1971. You further agree to pay to Metropolitan Life Insurance Company whatever fee it charges for such extension.

"3. This amendment is not intended and shall not be construed as a partial or full exercise of the option but constitutes only an amendment to it.

"4. You further agree to provide Metropolitan with the Rent Roll certificates required in paragraph 20 of the commitment.

"5. You agree not to mortgage or encumber or allow Cherokee East Corporation, to mortgage or encumber any of the real estate covered by the option, other than the loan of Metropolitan Life Insurance Company.

"6. You agree to not allow the issuance of any of the authorized and unissued stock of Cherokee East Corporation.

"7. This amendment shall not alter my right under the option to elect at any time within one year following the closing of the sale to discharge my mortgage obligation by conveying to you title to Parcel II.

"8. This amendment applies to all real estate covered by the option, both Parcel I and Parcel II.

"9. *I agree to the five month extension and further agree that May 22, 1971 shall be the first date on which I may exercise my option. The 60 day notification period and 30 day closing period and all other terms remain unchanged and the year option included in the original agreement on Parcel II is also extended for a full year from the date the option is exercised by the buyer.*

"10. *All original terms and conditions of the original option remain in full force and effect except such that are specifically amended by this agreement.*

"Very truly yours,

"/s/ Sarah Grant Cole
Sarah Grant Cole"

(Emphasis supplied.)

The plaintiff's contention at trial was that the stockholder defendants failed to give her written notice of the loan closing, therefore the sixty day option period never began to run; furthermore, that the stockholder defendants subsequently sold the complex to defendant Preston H. Haskell, Jr., thereby breaching the contract and depriving her of the right to exercise the option for which she had paid $50,000.00.

The defendant stockholders contend that the amendment to the contract did away with the necessity to give written notice and, in the alternative, that the amendment was itself written notice. They also contend that the plaintiff had actual knowledge of the loan closing through various conversations with the defendant Gerald A. Drennen and others and that since she had actual notice, written notice was not required.

The primary issue therefore seems to be, did the written notice provision in the written contract survive the amendment. Stated another way, did the amendment modify the original contract so as to dispense with the necessity to give written notice.

Provisions 1, 9 and 10 of the amendment are unclear when read in conjunction with the written notice provision of the original contract. Provision 1 states that the sellers (stockholders) agreed to close the loan on December 22, 1970. Provision 9 states that the buyer (plaintiff) agrees to the five months extension and that "the first date on which I may exercise my option" is May 22, 1971. It further states that the sixty day notification period will remain unchanged. Provision 10 states that all terms and conditions of the original contract are to remain in full force and effect "except such that are specifically amended by this agreement." There is nothing specific in the amendment about written notice. What does the word "may" in provision 9 mean? Does the word "may" used in that context mean that May 22, 1971, is the day on which her sixty day option must begin to run? Or does it mean that if the loan is closed in accordance with provision 1 and she receives written notification to that effect and she chooses to exercise the option, then she may do so on that date?

When the terms of contract are clear, it is incumbent upon the court to analyze and determine the force and effect of those terms as a matter of law. Air Conditioning Engineers v. Small, 259 Ala. 171, 65 So.2d 698. However when, as here, the contract is ambiguous, parol evidence is admissible to ascertain the true intent of the parties. This is a fact question to be determined by a jury or, as in this case, by the trial judge sitting without a jury. Pritchett v. Wade, 261 Ala. 156, 73 So.2d 533.

The testimony was in sharp conflict as to the meaning of the amendment. There was evidence tending to show that the plaintiff had actual knowledge of the loan closing; that she had many conversations with Gerald A. Drennen, reputed agent of

the stockholders, regarding each step of the negotiation. There was also evidence that it was the intention of the stockholders that the amendment dispensed with the notice requirement. On the other hand, the plaintiff's evidence tended to show that she had no knowledge of the loan closing; that she received no written notice; and that it was her understanding that the contract and amendment clearly called for written notice.

 It is a general rule that a party claiming that a contract modifies a prior contract must show that the later contract is definite and certain as to the terms of modification, and the modification extends only so far as the terms are definite, certain and intentional. 17 C.J.S. Contracts § 374, p. 424.

 "[W]hen the terms of the original contract are undisputed and were thereafter altered or changed by the mutual agreement of the parties and the extent of that modification only was in dispute, it is clearly 'a question for the jury to determine.'" Jeff D. Jordan & Co. v. Yancey & Abernathy, 242 Ala. 385, 6 So.2d 473.

The trial court concluded from the evidence that the plaintiff did not forfeit the option money. Implicit in its holding was a finding of fact that the parties did not intend, nor did the two instruments unambiguously provide that the modification would extinguish the stockholders' original duty to furnish written notice of the closing of the floor loan and thereby start the running of the option period.

 The factual findings of the court have the effect of a jury's verdict—the resulting judgment grounded upon such findings are accorded on appeal a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust. Kubiszyn v. Bradley, 292 Ala. 570, 298 So.2d 9; Hayes v. Kennedy, 292 Ala. 362, 294 So.2d 739.

 It is not a matter of whether this Court agrees with the conclusions reached by the trial court, rather the inquiry is whether there was sufficient evidence before the court to justify its conclusion.

We are of the opinion that the judgment was not plainly erroneous or manifestly unjust under the rule announced above. Therefore, the judgment appealed from is due to be and is affirmed.

Affirmed.

HEFLIN, C. J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.