This is the appeal of an action on a contract. The trial court, after an ore tenus hearing, entered judgment for the plaintiff. The defendant has appealed the adverse judgment of the trial court and that court's interpretation of the contract.
The dispositive issue before this court is whether the trial court erred in its interpretation of the agreement. We hold that it did and reverse the judgment rendered below.
The record before us reveals the following: The plaintiff and defendant entered into a written contract in 1974 under which the plaintiff agreed to furnish electrical service to the defendant at agreed upon rates. The plaintiff prepared the agreement. The contract was to expire after five years, i.e., August, 1979. The defendant began receiving power from the plaintiff in 1974, and continued to purchase power until its service was terminated in October, 1977. During this three-year period, there were three months in 1975 and six months in 1977 in which the defendant used no power.
The original contract specified that in the event the defendant used no power, it was obligated to pay a minimum of $300 per month for the right to have power available. Specifically, the original contract regarding minimum payments is as follows:
"2. Payment.
 "a. The Consumer shall pay the Seller for service hereunder at the rate and upon the terms and conditions set forth in Schedule LP4 attached to and made a part of this Agreement. Notwithstanding any provision of the Schedule and irrespective of Consumer's requirements for or use of electric power and energy, the demand for billing purposes hereunder shall be not less than _____ kilowatts for any billing period. In any event the Consumer shall pay to the Seller not less than $300.00 plus tax per month for service or for having service available hereunder during the term hereof." (Emphasis supplied.)
The controversy in this case is whether the plaintiff is entitled under terms of its agreement to charge the defendant more than the minimum $300 charge in those months in which the defendant used no power.
The trial court concluded that the plaintiff had such a right. The plaintiff premised its right to charge more than the specified minimum on two provisions of the contract.
Under paragraph 2 (a) of the original agreement, as set out above, the defendant agreed to pay the plaintiff at "rates and upon the terms and conditions set forth in Schedule LP-4 attached to and made part of" the agreement. Schedule LP-4 provides in pertinent part:
"DETERMINATION OF BILLING DEMAND
 "The billing demand shall be determined by meters measuring the consumer's maximum integrated 15 minute demand in KW but shall not be less than 75% of the highest demand established during the preceding 11 months. . . .
"MINIMUM BILL
 "The minimum monthly charge will be the highest of any one of the following:
 "(1) The minimum bill specified in the contract for service, or *Page 97 
 "(2) A sum equal to $1.00 per KVA of installed transformer capacity required to serve the load. . . ." (Emphasis supplied.)
The plaintiff contends that the two methods expressly set out in the "MINIMUM BILL" provision of the original contract for the computation of the defendant's monthly indebtedness are superseded by the provisions of the "DETERMINATION OF BILLING DEMAND" section in months when the defendant used no power.
Specifically, the plaintiff maintains that it is entitled to charge the defendant 75% of the highest demand established during the preceding eleven months rather than the $300 minimum.
To further substantiate plaintiff's contention that this is the proper contract interpretation, the plaintiff points to paragraph 2 (d) of the agreement which in essence provides that the plaintiff may at any time modify the contract to pass onrate increases which the plaintiff becomes obligated to pay its supplier, Alabama Power. The record reveals that two such rate increases in fact occurred and therefore the plaintiff modified the original agreement with its LP-9 and LP-10 schedules which went into effect in 1974 and 1977, respectively. Both these revised schedules (LP-9 and LP-10) provided three possible methods by which to compute defendant's minimum monthly bills:
"DETERMINATION OF BILLING DEMAND:
 "The billing demand shall be determined by meters measuring the consumer's maximum integrated 15 minute demand in KW or KVA, as the case may be, but shall not be less than 75% of the highest demand established during the preceding 11 months. . . .
. . . . .
"MINIMUM BILL:
 "The minimum monthly charge will be the highest of any one of the following:
 "(1) The minimum bill specified in the contract for service; or
 "(2) A sum equal to $1.50 per KVA of installed transformer capacity required to serve the load; or
 "(3) The billing demand charge as per schedule above." (Emphasis supplied.)
The plaintiff, as we perceive his argument, maintains that because the subsequent LP-9 and LP-10 schedules provide three methods by which to compute defendant's minimum bill, this clearly indicates that the original LP-4 schedule was intended to and allowed plaintiff to compute the defendant's minimum bill pursuant to the third method, i.e., the 75% calculation set forth in the original LP-4 "DETERMINATION OF BILLING DEMAND" section.
The defendant maintains that the contract's language is clearly ambiguous with respect to computation of its minimum bill. In addition, the defendant contends that to the extent that the plaintiff drafted the ambiguous agreement, it should be construed against the plaintiff. Defendant further argues that the interpretation placed on the agreement by the plaintiff is unreasonable in that it requires the defendant to pay for power it did not use. We agree with the defendant's contentions.
The law of Alabama on the issue before us is well settled. Whether a written contract is unclear and ambiguous is a question of law for the court. Southern Cafeteria OperatingCo., Inc. v. Eley, 52 Ala. App. 656, 296 So.2d 743 (1974). Seealso Task Consultants, Inc. v. Finerty, Ala.Civ.App.,339 So.2d 87 (1976). Once it appears the contract is ambiguous, the court will construe the contract more strongly against the party who prepared the agreement. Jewell v. Jackson Whitsitt CottonCo., 294 Ala. 112, 313 So.2d 157 (1975). While the court cannot make contracts for the parties, it must give such agreements a reasonable construction. Charles H. McCauley Associates, Inc.v. Snook, Ala., 339 So.2d 1011 (1976).
In the instant case, as seen from the above, the contract is subject to two interpretations which are as follows: One interpretation provides that the original LP-4 *Page 98 
schedule's two methods for calculating the customer's minimum bill under the "MINIMUM BILL" section of the contract are the sole methods by which to arrive at the defendant's minimum monthly debt and that schedule's "DETERMINATION OF BILLING DEMAND" section cannot be considered as providing a third alternative.
The other construction of the contract provides that there are three alternative methods by which to arrive at the customer's minimum bill. Under this interpretation, the two methods set forth in the LP-4 schedule's "MINIMUM BILL" section are to be read together with that schedule's "DETERMINATION OF BILLING DEMAND" section and, therefore, the plaintiff may charge the customer 75% of the highest monthly demand established by the customer during the preceding eleven months.
Because there are two possible reasonable contract interpretations, the agreement's construction is a matter of law appropriate for the court's deliberations. SouthernCafeteria, supra.
Contrary to plaintiff's contention, in the original LP-4 schedule there are only two express methods by which to calculate defendant's minimum bill. To this court, the conclusion is inescapable that these two methods delineated in the "MINIMUM BILL" section are the exclusive means of calculating the defendant's minimum bill. This is so, because the "MINIMUM BILL" section of the contract which is controlling in this instance so states. It is not necessary nor permissible to attempt to integrate the "DETERMINATION OF BILLING DEMAND" section of the contract into the "MINIMUM BILL" provision. Where possible, courts should not tamper with and change contract terms. See 5 Ala. Digest Contracts 143 (3).
There is further support for this conclusion in that the plaintiff subsequently modified the contract with the LP-9 and LP-10 schedules, which modifications were apparently necessary to remove the ambiguity in the original LP-4 schedule. Had the plaintiff initially desired three methods by which to compute the defendant's minimum bill, it could easily have drafted the original LP-4 schedule to accrue this result.
As indicated earlier, the plaintiff prepared the contract upon which it bases this suit and thus, under the well settled rules of contract construction noted above, it is proper for the court to construe the contract most favorably for the defendant. Jewell v. Jackson Whitsitt, supra. In addition, we find that the plaintiff's position that the defendant is obligated to pay for power which it in fact did not consume, is not a reasonable construction of the parties' bargain. McCauleyAssociates, supra.
The plaintiff additionally maintains that it had the right, pursuant to paragraph 2 (d) of the contract, to modify the "MINIMUM BILL" section in the LP-4 schedule and did so with its subsequent LP-9 and LP-10 schedules. The plaintiff argues that the effect of these modifications was to obligate the defendant to pay a minimum bill based on the "75% of maximum use" calculations. We do not agree with this contention. While paragraph 2 (d) of the agreement allows the plaintiff to pass on rate increases to the defendant, it plainly does not allow the plaintiff to unilaterally change the method by which the defendant's monthly bill is calculated.
In addition, we would note that it is an elementary principle of contract law that in order for a contract to be validly modified, there must be mutual assent to the new terms by both parties. Kinmon v. J.P. King Auction Co., Inc., 290 Ala. 323,276 So.2d 569 (1973). It is incumbent on the party claiming the modification to show that the new agreement was mutually agreed to. See, e., g., Johnson-Rast Hays, Inc. v. Cole, 294 Ala. 32,310 So.2d 885 (1975). The record before us is barren as to any proof of a mutually bargained for modification with respect to changing the procedures to calculate the defendant's minimum monthly bill. For these reasons, we hold that the LP-9 and LP-10 schedules were not valid modifications to the original contract terms with respect to the calculation of the defendant's minimum monthly bill. *Page 99 
For the foregoing reasons, we reverse and remand for entry of a judgment not inconsistent with this opinion.
REVERSED AND REMANDED FOR ENTRY OF A JUDGMENT NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P.J., and BRADLEY, J., concur.