This is an appeal from a declaratory judgment in a proceeding to determine the validity of a rate increase under the terms of a contract. We affirm in part, reverse in part, and remand.
 FACTS
Plaintiff, the city of Phenix City, Alabama (City), a municipal corporation located in Russell County, operates a water distribution system. Defendant, Smiths Water Authority (Smiths), is a public corporation which operates a water distribution system serving customers in Lee and Russell counties. On April 18, 1979, the parties entered into a 27-year "Contract for Sale of Water" (contract) by which the City agreed to furnish and deliver potable water to Smiths at specified rates and under specified conditions. The provisions of the contract pertinent to this appeal are the following:
"THE AUTHORITY [SMITHS] AGREES
 "1. (Rates and Payment Date) To pay to the City on the 20th day of each month for water delivered during the preceding month at the rate of 0.52 per 1,000 gallons up to a maximum of 10 million gallons.
 "2. If the Authority shall use water in excess of 10 million gallons per month during any one calendar month, the City may discontinue providing water or the City may charge an excess water usage penalty rate for all water used in excess of 10 million gallons per month, which penalty rate includes the basic water charge per 1,000 gallons. Said penalty rate shall be in accordance with the following schedule.
 "PENALTY RATES FOR WATER USED IN EXCESS OF 10 MILLION GALLONS PER MONTH
 "Total Monthly Rate per 1,000 Consumption Gallons for all Water used in Excess of 10 Million Gallons per Month
 "10-11 million gallons .85 "11-12 million gallons .95 "12-13 million gallons 1.10 "13-14 million gallons 1.30 "14-15 million gallons 1.55 "15-16 million gallons 1.85 "16-17 million gallons 2.20 "17-18 million gallons 2.60 "Over 18 million gallons 3.05
". . .
 "It is further mutually agreed between the City and the Authority as follows:
". . . *Page 829 
 "(5) Modification of Contract — Upon the expiration of the period of two years from date hereof, and upon the expiration of each two-year period thereafter during the term of this Agreement, the City and the Authority will review the rates to be paid by the Authority for water furnished it hereunder. If, during such two-year period the cost to the City of furnishing water to the Authority hereunder has increased, the City may make a comparable increase in the rates to be charged the Authority for water hereunder. . . . In the event the City makes any such increase in rates, the City and Authority will enter into an appropriate agreement supplemental hereto stating the amount of the revised charge for water to be furnished the Authority hereunder.
 "Further, in the event that during such two-year period, the City has made a general increase in the rates charged by it to its customers for water furnished them and in the event the City represents to the Authority that such general increase was made for the purpose of providing sufficient monies to enable the City to operate and maintain its then existing water system, the City may make a comparable increase in the rates charged to the Authority for water furnished hereunder, in which event the City and the Authority will enter into an appropriate agreement supplemental hereto stating the amount of the revised charge for water to be furnished the Authority hereunder.
 "Both the City and the Authority agree that upon the happening of any of the events specified in the preceding two paragraphs, they will promptly execute the supplemental agreements therein referred to, irrespective of their then respective financial conditions.
". . .
 "(9) Miscellaneous — That the construction of the water supply distribution system by the Authority was financed by a bond issue, guaranteed by the United States of America, acting through the Farmers Home Administration of the United States Department of Agriculture, and the provisions hereof pertaining to the undertakings of the Authority are conditioned upon the approval, in writing, of the State Director of Alabama of the Farmers Home Administration. Similarly, any modification of the provisions of this contract shall be conditioned upon the approval in writing, of the State Director of Alabama, of the Farmers Home Administration."
On March 2, 1982, the City Council of Phenix City, acting upon a motion, imposed a water rate increase upon all its customers, including Smiths. The new rates adopted by the City for Smiths were:
Quantity (Gallons) Unit Price (1,000 Gallons)
First 10 million $1.15 Next 2 million 1.05 Next 2 million 1.00 Next 2 million .95 Next 2 million .90 Above 18 million .85
These new rates were to become effective April 1, 1982.
When Smiths refused to enter into a supplemental agreement agreeing to pay the increased rates, the City filed the action below seeking a declaration that the rate increase imposed upon Smiths was in accord with the terms of the contract and did not constitute a breach. Smiths counterclaimed, seeking a judgment that the rate increase, so far as it pertained to Smiths, was void and of no force or effect in law.
The City subsequently added by amendment the Farmers Home Administration (FHA) as a necessary and proper party defendant. Since the United States of America was the real party in interest, the FHA had the action removed to the United States District Court for the Middle District of Alabama pursuant to28 U.S.C. § 1441 (a). The FHA then moved to be dismissed from the action, the motion was granted, and the action was remanded to the Circuit Court of Russell County.
At a hearing ore tenus on December 20, 1982, Smiths presented four grounds for invalidating the rate increase. The court found in favor of the City on all four *Page 830 
grounds and declared the rate increase to be effective as of April 1, 1982. From that judgment entered February 3, 1983, and the court's subsequent denial of the motion of Smiths to vacate or amend judgment or, in the alternative, for a new trial, Smiths now appeals.
 ISSUES
The following issues are presented for review:
(1) Whether the City may increase the rates of Smiths at any time during the life of the contract, or is limited to imposing such increase only at the expiration of a two-year period.
(2) In the event that the City was entitled under the contract to impose an increase during a two-year period, whether the City applied an improper standard in determining the size of the rate increase.
(3) Whether a motion or resolution, rather than an ordinance which must be published to be effective, was a proper vehicle for imposing the rate increase.
(4) Whether the rate increase is invalid because the contractual condition requiring approval of the FHA was not met.
 I
We hold that the trial court erred in concluding that the City is authorized under the contract to increase the rates charged Smiths at any time during the life of the contract.
Whether a written contract is unclear and ambiguous is a question of law for the court. E.g., Universal DevelopmentCorp. v. Shader, 382 So.2d 1115 (Ala. 1980). While the court cannot make contracts for the parties, it must give their agreements a reasonable construction. Charles H. McCauleyAssociates, Inc. v. Snook, 339 So.2d 1011 (Ala. 1976). See alsoJohnston-Rast Hays v. Cole, 294 Ala. 32, 310 So.2d 885
(1975).
Subsection (5) of the contract, entitled "Modification of Contract," specifically states that the rates will be reviewed by both parties at the expiration of each two-year period following the date the contract was entered. At any of those times, the City may unilaterally impose a rate increase upon Smiths if either of the following conditions is met:
(1) The cost to the City of furnishing water to Smiths has increased during the immediately preceding two-year period; or
(2) The City has made a general increase in the rates charged to its other customers (and represents that it was for the purpose of providing sufficient monies to enable the City to operate its then-existing water system) during the immediately preceding two-year period.
In the event the first condition has been met at the time rates are being reviewed, the City may unilaterally modify the contract by imposing a rate increase upon Smiths comparable to the increase in the City's costs over the immediately preceding two-year period. If the second condition has been met at the time rates are being reviewed, i.e. if the City merelyrepresents to Smiths that a general rate increase imposed on its other customers during the last two years was "for the purpose of providing sufficient monies to enable the City to operate its then existing water system," the City mayunilaterally modify the contract by imposing a rate increase upon Smiths comparable to the general rate increase imposed upon its other customers.
Contrary to its construction by the trial court, Subsection (5) clearly and unambiguously sets forth the two conditions under which a unilateral modification to the contract may be made at a time when rates are reviewable. Nowhere in this subsection does it appear that the City may make a unilateral modification under any other condition or at any other time during the life of the 27-year contract.
The City attempts to raise the affirmative defense of waiver for the first time on appeal. See Rule 8 (c), A.R.Civ.P.
It is well-established that this Court will not consider a theory or issue where it was not pleaded or raised in the *Page 831 
trial court. E.g., Johnson v. Keener, 370 So.2d 265 (Ala. 1979); Union Springs Telephone Co. v. Green, 285 Ala. 114,229 So.2d 503 (1969); Inter-Ocean Ins. Co. v. Banks, 268 Ala. 25,104 So.2d 836 (Ala. 1958); 2 Ala.Dig., Appeal Error, Key No. 171 (1).
 II
Without addressing the trial court's findings that the rate increase imposed upon Smiths was "reasonable" or "comparable" to the increase imposed upon the City's other customers, and that the increases were "made for the purpose of providing sufficient monies," etc., we hold that the court erred in concluding that the rate increase to Smiths met the requirements of the parties' contract.
Under the terms of the original contract, Smiths agreed to purchase a maximum of 10 million gallons of water from the City per month. It further agreed to pay higher "penalty" rates for water used in excess of 10 million gallons per month as well as to risk a discontinuance of service by the City in the event it used more than 10 million gallons.
When the City unilaterally imposed the rate increase upon Smiths, it inverted the rate structure as well, contrary to the rate structure contained in the contract. Under the new rate structure, the penalties (higher prices for water used in excess of 10 million gallons per month) were eliminated. In effect, under the new structure, Smiths would suffer an approximate 121% increase in the rate charged on the maximum
amount it is allowed to purchase before risking a discontinuance of service.
Testimony presented at trial revealed that Smiths was currently averaging using 14 to 15 million gallons of water from the City per month. It was further shown, however, that Smiths was in the process of obtaining an additional water source which, if implemented, would greatly lessen its requirements from the City.
Although testimony presented by both parties and documentary evidence revealed that Smiths had attempted to negotiate with the City for a greater maximum amount of water for its use, mere negotiations for a contract modification do not amount to a modification. In Johnston-Rast Hays, Inc. v. Cole, supra at 37, 310 So.2d 885, the Court stated: "It is a general rule that a party claiming that a contract modifies a prior contract must show that the later contract is definite and certain as to the terms of modification, and the modification extends only so far as the terms are definite, certain and intentional." See also
17A C.J.S. Contracts § 374 (1963). Any modification to the penalty provision would require the mutual assent of the parties. That provision is independent of the provisions under Subsection (5), "Modification of Contract," which allows unilateral rate increases under the enumerated conditions. See,e.g., Kinmon v. J.P. King Auction Co., Inc., 290 Ala. 323,276 So.2d 569 (1973). See also Wiregrass Construction Co., Inc., v.Tallapoosa River Electric Cooperative, Inc., 365 So.2d 95
(Ala.Civ.App. 1978) (while provision of contract between electricity supplier and customer allowed rate increases due to increased costs to be unilaterally imposed, it plainly did not allow supplier to unilaterally change the method by which customer's monthly bill was calculated).
 III
We agree with and affirm the trial court's conclusion that the City's mode and manner of adopting the rate increase as it applied to Smiths was not improper. The modification of the contract effecting the rate increase, had it been in compliance with the terms of the contract, would not have been of such a general and permanent nature as to require the passage of an ordinance requiring publication. See generally Code 1975, §11-45-8 (b).
 IV
Since we have determined that the rate increase which is the subject of this action was improper, it is unnecessary for us to determine whether the rate increase was invalid because the condition requiring *Page 832 
FHA approval in writing, set forth in Subparagraph (9) of the contract, was not met.
For the foregoing reasons, the declaratory judgment rendered below is affirmed in part, reversed in part, and the case is remanded for further proceedings in accord with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.