THIGPEN, Judge.
Contractor Success Group, Inc. (CSG), along with its president, John Young, and chief executive officer, James D. Abrams, appeal from a judgment holding that a settlement agreement it purportedly entered into with Service Thrust Organization, Inc. (STO), and Air Conditioning by Luquire, Inc. (ACL), is valid and binding upon all the parties. At issue here is whether certain statements made by Young in the course of settlement negotiations are sufficient to bind CSG, Young, and Abrams to the terms of a written settlement agreement, even though the agreement was never signed by Young or Abrams or their attorneys.
CSG provides management and consulting, marketing, training, and other business services to businesses that sell and service heating, ventilation, and air conditioning equipment (HVAC). Young and Abrams each own 50% of CSG’s stock. The HVAC businesses under contract with CSG use various manuals, guides, and contract forms published and provided by CSG for the exclusive use of the HVAC contractors. These materials are copyrighted and confidential, and, along with other items, such as CSG’s customer lists, techniques, and trade secrets, are referred to as the “CSG System.” ACL is an Alabama corporation engaged in the HVAC business. ACL and its president, Hans Luquire, are affiliates of the CSG program. ACL formed its own marketing and licensing corporation, STO, with Luquire as its principal stockholder, and began to market a program designed for HVAC businesses.
In February 1993, a dispute arose between CSG and STO regarding STO’s methods of promoting its marketing system, which included the use of testimonials by HVAC businesses that were under contract *214 to CSG. STO filed a declaratory action to determine whether it had violated or infringed upon any copyrights, trademarks, or. existing contracts with CSG. On March 10,1993, CSG filed a federal lawsuit against STO in St. Louis, Missouri, alleging, inter alia, copyright violations and trade dress infringement.[1] During the course of these lawsuits, the parties entered settlement negotiations. Letters and proposed agreements were exchanged at various times during the summer of 1993.
In August 1993, severe flooding in Missouri caused a business owned by Abrams to be under approximately nine feet of water. Because of the difficulty of doing business in this situation, Abrams instructed his attorneys to inform his clients and business associates that he would be temporarily unavailable, and that everything would have to be “put on hold” until September. During this time, Young and Luquire talked with one another on the telephone several times regarding a. proposed settlement agreement. During August 1993, Young informed Lu-quire that a provision in the proposed agreement was unacceptable. After consulting his attorneys, Luquire telephoned Young and asked if the agreement would be acceptable if the disputed provision was deleted, as well as whether Abrams’s and Young’s attorneys would approve the settlement agreement without the provision. Later, Young telephoned Luquire and stated that if the disputed provision was deleted, the agreement would be acceptable. Luquire responded by saying that he would have the agreement redrafted without the disputed provision, sign it, and send it to Young. It appears of record that Luquire tape-recorded these two conversations, apparently without Young’s knowledge, and a transcript of the conversations was admitted in a hearing. Luquire later sent a copy of the agreement and a letter confirming the settlement.
Young informed Luquire that his attorneys needed to review the document. The agreement sent by Luquire was never signed by Young or Abrams or their attorneys. In September 1993, Young and his attorneys informed Luquire that the agreement needed additional language regarding the issue of trade dress infringement, and that the agreement had not previously addressed this issue. Negotiations again broke down, and on October 8, 1993, Luquire and STO filed a motion to enforce the settlement agreement, along with a request for an evidentiary hearing on the matter.
On October 2, 1994, after a hearing with oral testimony and numerous exhibits, the trial court entered an order holding the settlement agreement to be valid and enforceable and ordering that the parties execute the agreement and comply with it. CSG’s post-judgment motion was denied by operation of law, and CSG, Abrams, and Young appealed.
We begin our analysis of this case by noting that a presumption of correctness attaches to a trial court’s judgment that is based on findings of fact based on ore tenus evidence. This court will not disturb such a judgment unless it is either not supported by the evidence or it is shown to be palpably wrong or manifestly unjust. Gulf Shores, Ltd. v. Powrzanos, 442 So.2d 71 (Ala.1983). The factual findings of a trial court sitting without a jury have the effect of a jury verdict, and a judgment based upon such findings will not be disturbed unless plainly erroneous or manifestly unjust. Johnson-Rast & Hays, Inc. v. Cole, 294 Ala. 32, 310 So.2d 885 (1975).
On appeal, CSG contends that the trial court erred by enforcing an unsigned settlement agreement. CSG also argues that the settlement agreement, if held to be valid and enforceable, violates the Statute of Frauds, and further, that the trial court erred in refusing to grant CSG’s post-judgment motions.
STO contends that the parties had reached a “meeting of the minds” in this matter, and that Young’s statements serve to bind Abrams and CSG to the settlement. STO also asserts that Alabama law does not re *215 quire a signed writing to enforce a settlement agreement. Last, STO asserts that this settlement agreement does not fall within the Statute of Frauds, or, alternatively, that CSG is estopped from asserting the Statute of Frauds as a defense.
Our review of the applicable statutes, rules, and case law discloses no authority under which this settlement agreement may be enforced. It appears that the trial court erred in holding the settlement agreement enforceable against Young and Abrams and their attorneys, when none of those persons had, in fact, ever signed the agreement.
Ala.Code 1975, § 34-3-21, and Rule 47, A.R.App.P., govern the enforcement of settlement agreements. Neither of these authorities supports STO’s contention that the settlement agreement should be enforced. Section 34-3-21, states:
“An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court.”
Rule 47, A.R.App.P., states:
“No private agreement or consent between the parties or their attorneys, relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing, and signed by the party to be bound thereby; provided, however, agreements made in open court or at pretrial conferences are binding, whether such agreements are oral or written.”
Our Supreme Court addressed the application of these two authorities in Ex parte Sims, 627 So.2d 380 (Ala.1993). There, our Supreme Court held that § 34-3-21 specifically governs the enforcement and validity of settlement agreements reached between parties while a case is at trial level, while Rule 47, A.R.App.P., governs the enforcement and validity of settlement agreements reached while a case is on appeal. Accordingly, we conclude that this case is governed by § 34-3-21. Both that statute and Rule 47 provide that an oral settlement agreement is enforceable in Alabama only if it is made in open court or during a pretrial conference. It is clear from the record that the oral agreement at issue here was not made in open court or during a pretrial conference and was not entered into the minutes in open court.
Additionally, the written copy of the settlement agreement was never signed by Young or Abrams’s attorneys; thus, it is not enforceable. Ala.Code 1975, § 34-3-21. It is noteworthy that this statute is silent regarding the binding effect of a party’s signature in a written settlement agreement that is reached at the trial level; however, even if it did speak to such an occurrence, we note that neither Young nor Abrams ever signed the agreement. Accordingly, the settlement agreement at issue here cannot be enforced under the authority of § 34-3-21.
It is also clear under Alabama case law that this agreement cannot be enforced. In Phillips v. Knight, 559 So.2d 564 (Ala.1990), our Supreme Court held that a trial court had improperly granted a motion to enforce a settlement agreement when there was no evidence that the agreement was in writing or that the agreement was made in open court or at a pretrial conference. In regard to the evidence presented to the trial court, the Supreme Court stated:
“There is no document in the record showing that a ‘meeting of the minds’ ever occurred to the extent that any of the documents were signed by [the party] or his attorney.... There is no evidence that the agreement was in writing, nor that the agreement was made in open court or at a pre-trial conference. The evidence is quite the reverse....
“We hold, therefore, that the trial court erred, as a matter of law, in granting the motion to enforce the settlement agreement.”
Phillips, 559 So.2d at 568-69. (Emphasis in original.) (Citations omitted.) STO argues that Phillips is distinguishable from the instant ease, in that the negotiations in Phillips were between attorneys rather than the parties; we find no merit in this contention.
STO correctly contends that once a settlement agreement has been entered into, it is binding and will be summarily enforced. See Nero v. Chastang, 358 So.2d 740 (Ala.Civ.App.1978) *216 cert. denied, Ex parte Nero, 358 So.2d 744 (Ala.1978). It is axiomatic, however, that the parties must first enter into a valid and binding settlement agreement before it will be enforced. Nero, 358 So.2d 740. STO also contends that Young’s oral statements to Luquire should serve to bind CSG to the proposed settlement, in the same manner as a party may orally bind himself to a contract, and that the settlement should thus be held valid and enforceable under general principles of contract law. We decline to adopt STO’s construction. To do so would allow a party to call for the judicial enforcement of any aspect of oral negotiations toward a settlement and would have the practical effect of making a litigant reluctant to enter oral settlement negotiations. It is apparent from the voluminous record and protracted negotiations that these parties intended to reduce any settlement to a written agreement concurred in by all the parties. The right of a party to settle disputes through compromise should be and is encouraged by the courts of this state, and this court will not adopt a rule of construction that would make the parties reluctant to communicate with one another in a settlement negotiation.
Based upon the foregoing, we hold that the trial court erred as a matter of law in the holding that the agreement between the parties was valid and enforceable. Because of this holding, we pretermit as unnecessary any discussion of the issues of agency and the Statute of Frauds. The judgment of the trial court is due to be, and it hereby is, reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, J., concur.

. "Trade dress" is defined as “The total appearance and image of a product, including features such as size, texture, shape, color or color combinations, graphics, and even particular advertising and marketing techniques used to promote its sale.” Black's Law Dictionary, 6th ed. 1990.