MURDOCK, Justice
(concurring in part and dissenting in part).
I agree with the main opinion that the trial court did not err in entering a sum *340 mary judgment for Hyundai, and I therefore concur in Part I of the main opinion. I respectfully dissent, however, as to the issue whether the amendment to the Russell option agreement effectively removed the most-favored-nation clause from the agreement between the parties. Finally, I agree with the reversal of the judgment in favor of the IDB and against the McLe-more group, but, for the reasons described below, I would remand that portion of the case with different instructions than does the main opinion.

The Amendment to the Russell Option Agreement

The original option agreement signed by the Russells contained a single sentence describing the price to be paid to the Russells for their property. That sentence read as follows:
“The purchase price shall be the average of the two appraisals provided, however, in no event shall the purchase price be less than $4,500 per acre and further provided that the purchase price shall in no event be less than the price per acre paid to any other landowner included in the project planned for this Property.”
Similarly, the amendment to the option agreement signed by the Russells contained a single sentence describing the price to be paid to the Russells for their property. That sentence reads as follows: “It is hereby agreed that the purchase price for the Property is Four Thousand Five Hundred and No/100 ($4,500.00) per acre.”
On the basis of the well established principles stated by this Court in such cases as Harbison v. Strickland, 900 So.2d 385 (Ala.2004), and Johnson-Rast & Hays, Inc. v. Cole, 294 Ala. 32, 310 So.2d 885 (1975), I must dissent as to the conclusion reached by the main opinion regarding the amendment to the Russells’ option agreement. As this Court stated in Harbison:
“ ‘[I]t is elementary that it is the terns of the mitten contract, not the mental operations of one of the parties, that control its interpretation.’ Kinmon v. J.P. King Auction Co., 290 Ala. 323, 325, 276 So.2d 569, 570 (1973) (citing Todd v. Devaney, 265 Ala. 486, 92 So.2d 24 (1957)). ‘Stated another way, the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach.’ Lilley v. Gonzales, 417 So.2d 161, 163 (Ala.1982). “‘[A] court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state.” ’ Turner v. West Ridge Apartments, Inc., 893 So.2d 332 (Ala. 2004) (quoting Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998)).”
900 So.2d at 391 (emphasis added).
In essence, the main opinion states that it is not clear that the amendment to the option agreement definitely and certainly modifies the most-favored-nation clause. Based on an “objective approach,” I must conclude that it does. The requirement articulated in Johnson-Rast & Hays, Inc., is that the amendment to the contract be “definite and certain as to the terms of the modification.” 294 Ala. at 37, 310 So.2d at 889. Read objectively, the terms of the amendment to the option agreement are indeed “definite and certain” as to the price to be paid for the Russells’ property.
It also is true that the original option agreement states that “no modification of this Option and no waiver of any of its terms and conditions shall be affected unless made in writing and duly executed by the paHies hereto.” The amendment to the option agreement satisfies this condition.

*341
Reversal of the Judgment in Favor of the IDB and Against the McLemore Group

A written contract may be of such a nature as to require reference to parol evidence or facts in order to determine its “legal operation and effect” for at least two different reasons. First, the “meaning and construction of its words” might be ambiguous; that is, the words may be susceptible to more than one reasonable interpretation. Second, even if the meaning of the words used in a contract is not ambiguous, the legal operation and effect of those words may depend upon “collateral facts in pais." Boykin v. Bank of Mobile, 72 Ala. 262, 269 (1882). As this Court stated in Boykin: “[W]hen the legal operation and effect of an instrument depends, not only on the meaning and construction of its tuords, but upon collateral facts in pais [outside the contract] and extrinsic evidence, the inference from the facts to be drawn from the evidence should be submitted to the jury.” 72 Ala. at 269.
In this case, I believe we are in error to say that the term “project,” as used in the option agreements, and the concept of property “included in the project” are ambiguous. Neither that term nor that concept is susceptible to more than one reasonable meaning. It is true that, in order ultimately to determine the “legal operation and effect” of the option agreement’s reference to land “included in the project,” it is necessary to consult facts not found within the four corners of the instrument, i.e., “facts in pais.” But this is no different than the manner in which unambiguous contractual provisions often depend upon some reference to external facts in order to establish their operation.
For example, in this very case, the “legal operation and effect” of the pricing mechanism in the most-favored-nation clause is not discernible solely from the four corners of the option agreement in which it is found. Instead, it requires a consideration of the price at which other parcels in the project ultimately are purchased. Yet, we would not say that the pricing mechanism is “ambiguous.” Its “meaning” is clear; it simply depends upon collateral facts in pais for its “operation and effect.”
In the same way, the “meaning” of the reference in the option agreements to land “included in the project” is clear. That we must examine “collateral facts in pais ” in order to determine which parcels of land ultimately were included in the project does not make the use of that term in the agreement ambiguous.
That said, and upon consideration of the parol evidence with which we are presented in this case, I do not find there to be a genuine issue of material fact as to whether the Shelton property was “included in the project.” Nor do I find there to be any doubt as to the manner in which the option agreement was intended to operate in regard to the issue of “who the purchaser must be in order to trigger the most-favored-nation clause,” at least not as applied to the facts with which we are presented. The purchase of the Shelton property in the manner “arranged” and orchestrated by the governmental entities that engaged in a joint venture to purchase land for use by Hyundai clearly constituted a purchase of property “included in the project” for purposes of the most-favored-nation clause. I therefore would instruct the trial court on remand to enter a judgment for the McLemore group.