ON REHEARING
On rehearing the opinion of this court rendered on February 22, 1984 is withdrawn and the following substituted therefor.
Joe Lightsey and his wife, Alice M. Lightsey, established Centreville Building Supply Company in 1970. The business was incorporated with Joe and Alice owning all but two percent of the stock, which was owned by their sons, John and Brent Lightsey. On or about October 4, 1974, Alice, John and Joe (appellants) executed a document, a portion of which personally guarantied the accounts of Centreville Building Supply Company, Inc.
The Lightseys continued to do business as Centreville Building Supply Company, Inc., until August 10, 1977, at which time they sold that business to Charles D. Lee, his wife, Sandra Lee, and W.E. Belcher, Jr.
Teague Hardware Company, Inc. and Stratton-Warren Hardware, Inc. were notified of the sale and the names and addresses of the new stockholders of the corporation. When Centreville Building Supply was sold, Mrs. Lightsey testified that she contacted all creditors to notify them they would no longer be owners in the corporation and to determine if any personal guaranty was outstanding. She was advised by Stratton-Warren Hardware Company, Inc. that it would be necessary for her to write a letter telling of the change in ownership. Mrs. Lightsey wrote the letter and Stratton-Warren then went to Charles D. Lee, the new owner, and had him execute a personal guaranty for the debts of Centreville Building Supply Company, Inc. *Page 1004 
Orgill Brothers and Company, Inc. purchased Teague Hardware Company on March 31, 1978. Some twenty-one months later, Orgill Brothers purchased Stratton-Warren Hardware Company. Therefore, on May 11, 1982, the time of commencement of this action, Orgill Brothers owned the assets and liabilities of both Teague Hardware and Stratton-Warren Hardware.
After two amendments to the original complaint, Orgill Brothers and Company, Inc. was substituted as the plaintiff and sought (1) $8,545.12 plus interest and costs of defendant, Centreville Building Supply Company, Inc. on open account, which was count one of the original complaint and was dismissed immediately prior to the trial for insufficiency of service of process; (2) $8,545.12 plus interest and costs of defendants, Alice Lightsey, John Lightsey, and Joe Lightsey, based on a personal guaranty of debt of the Centreville Building Supply Company open account owed to Teague Hardware Company (hereinafter referred to as count two); and (3) $4,473.37 plus interest and costs of defendants, the Lightseys, based upon a personal guaranty of the S.J. Lightsey and Son Construction Company, Inc. debt to Stratton-Warren (plaintiff's exhibit E) (count three). This debt was reduced to a consent judgment to Orgill Brothers and Company, the successor in interest to Stratton-Warren, against S.J. Lightsey and Sons Construction Company, Inc., in the amount of $4,473.37 in the District Court of Bibb County.
The jury returned a verdict for the Lightseys on count two of the complaint and against the Lightseys on count three. After the Lightseys' posttrial motions were overruled, they appealed as to count three.
Orgill Brothers has also appealed from the rulings on their posttrial motions as to count two of the complaint.
The first issue raised by the Lightseys in their appeal is whether Orgill Brothers was the proper party to sue on the personal guaranty signed by the Lightseys to Stratton-Warren.
The Lightseys argue that prior to trial the action was amended to change the parties and this violated rules 17, 18, and 20 of the Alabama Rules of Civil Procedure. The Alabama Rules of Civil Procedure, however, provide in rule 17, "Every action shall be prosecuted in the name of the real party in interest." In a recent Alabama case the court held:
 "The effect of Rule 17 (a) is that the action must be brought by the person who is entitled to enforce the right claimed therein. Who has such right is a matter of substantive law of the particular jurisdiction. The purpose of the rule is to protect the defendant from subsequent action by the party actually entitled to recover and to ensure that a judgment will have res judicata effect." (Citation omitted.)
U-Haul Co. v. Turner, 355 So.2d 384 (Ala.Civ.App. 1978). Orgill Brothers contends it was the real party in interest and that the trial court properly allowed the change in parties. We agree.
Moreover, the Lightseys' argument that the guaranties to Stratton-Warren were not assigned to Orgill Brothers because they were not endorsed appears to be meritless. The Lightseys argue that at common law a guaranty, like other choses in action, was not assignable and since the guaranty was made to Stratton-Warren, it could not be assigned to Orgill Brothers. The common-law rule that guaranties are not assignable has been modified by statutes and decisions to permit an action to be maintained by the assignee of a chose in action or by the realparty in interest, which is Orgill Brothers in the present case. 38 C.J.S. Guaranty § 86 (1943). Additionally, in Henleyv. Bush, 33 Ala. 636 (1859), the court held the predecessor statute of section 8-5-20, Code 1975, dealing with assignments and endorsements of contracts for the payment of money, changes the common law to authorize the action to be brought in the name of the real party in interest in suits on contracts for the payment of money, whether they are assigned, endorsed, in writing, or simply transferred by delivery. It appears in the present case that Orgill Brothers received all the assets *Page 1005 
and liabilities upon the acquisition of Stratton-Warren and, hence, is the real party in interest. Therefore, based onHenley, supra, we conclude that an endorsement was not required for the assignment of the guaranty.
The next issue argued by the Lightseys is that the judgment entered on count three did not conform to the jury verdict and the evidence concerning interest. The Lightseys contend that it was not possible to hold them liable for interest accruing on the debt of S.J. Lightsey and Son Construction Company, Inc. since the guaranty agreement they signed contained no agreement to pay interest on the debt it secured. We disagree.
The agreement that the Lightseys signed stated in pertinent part as follows: "I agree to pay any and all legal service charges added each month on past due invoices." The Lightseys claim that "legal service charges" are not the equivalent of interest. Interest, however, has been defined as "a sum paid or charged for the use of money." Random House Dictionary of theEnglish Language p. 741 (1971). Moreover, Corpus Juris Secundum states that "as a general rule a guarantor is liable for interest accruing on the principal debt or obligation whose payment is guaranteed, particularly if the contract of guaranty so provides." 38 C.J.S. Guaranty § 57 (1943) (footnotes omitted). We deem the term "legal service charges" as used in the contract in the case at bar to include interest. Hence, interest was due on the guaranty signed by the Lightseys. Additionally, the jury was charged that the interest rate would be one percent per month on a verdict rendered for plaintiff and there was no objection to this charge.
Also, the Lightseys, in their brief, seem to imply that someone other than the jury included the phrase "with interest" in parentheses after the judgment. This implication, however, is not supported by any evidence in the record. We find no error here.
The last issue for our consideration is Orgill Brothers' contention on cross-appeal that the trial court erred in overruling its motion for judgment n.o.v. because the jury verdict on count two was contrary to the undisputed evidence in certain respects and contrary to the great weight of evidence and legally insufficient in other respects.
The Lightseys argued at trial that their guaranty was withdrawn prior to the time the debt was incurred by the principal obligor (Centreville Building Supply Co., Inc.) as evidenced by defendant's exhibit 3.
It is settled law that "[a] promise of guaranty . . . is revocable like other offers." 1 A. Corbin, Corbin on Contracts
§ 38 (1963). "The method of exercising this power [of revocation] varies; usually it is by giving notice to the offeree." 1 A. Corbin, Corbin on Contracts § 38 (1963).
It is settled law in Alabama that "[c]ontracting parties are free to modify their contract by mutual assent." Kinmon v. J.P.King Auction Co., 290 Ala. 323, 276 So.2d 569 (1973). And, since mutual assent is a factual issue, it must be determined by the jury. Cook v. Sweatt, 282 Ala. 177, 209 So.2d 891
(1965).
The guaranty made by the Lightseys provided that "we hereby personally guarantee the payment of all their [Centreville Building Supply Company, Inc.] obligations to you until withdrawn by us by certified mail."
The evidence in the case at bar shows that when Alice and Joe Lightsey sold their interest in Centreville Building Supply they contacted all creditors to notify them of the fact that they were no longer owners and to determine any personal guaranty outstanding. Mrs. Lightsey was told by Stratton-Warren that it would be necessary to advise it of the sale in writing. She wrote a letter to Stratton-Warren informing it of the sale. Shortly thereafter Stratton-Warren required the new owner, Charles D. Lee, to execute a personal guaranty of the debts of Centreville Building Supply.
Although the written notice to Stratton-Warren did not specifically revoke the *Page 1006 
Lightseys' guaranty, the fact that Alice and Joe Lightsey informed Stratton-Warren of the sale of their interest in Centreville Building Supply and asked about any outstanding personal guaranty of the debts of the company could be considered by the jury as an offer by the Lightseys to revoke their guaranty. And, when Stratton-Warren told the Lightseys to write a letter advising of the sale of their interest in Centreville Building Supply, the jury could also conclude that Stratton-Warren had agreed to modify the guaranty by accepting written notice of the sale of the Lightseys' interest in that company as a revocation of the Lightseys' guaranty.
The evidence supports the jury's verdict in favor of Joe and Alice Lightsey on count two of the complaint, and we affirm the verdict and judgment as to those parties.
There also is evidence in the record to support the jury's verdict in favor of John Lightsey on count two of the complaint. The record reveals that John Lightsey sold his interest in Centreville Building Supply at the time Joe and Alice Lightsey sold their interest. There is in evidence a letter from Charles D. Lee to Stratton-Warren stating that he had purchased all outstanding stock in Centreville Building Supply and had accepted all liabilities of the corporation. Shortly thereafter, the Centreville Building Supply account was paid in full.
Although John Lightsey's name did not appear on the letter written by Alice and Joe Lightsey to Stratton-Warren informing it of the sale of their interest in Centreville Building Supply, the jury could have readily concluded from the testimony in the record that Alice and Joe Lightsey were also speaking for John Lightsey when they wrote the letter to Stratton-Warren revoking their personal guaranty.
The parties modified the manner in which revocation would take place and the jury properly determined that by "mutual assent," all the Lightseys revoked the entire personal guaranty. This was based on Mrs. Lightsey's compliance with the requirements enunciated by Stratton-Warren.
Based on the above, we conclude also that the evidence supports the jury's verdict in favor of John Lightsey on count two of the complaint.
The verdict and judgment on count three of the complaint is affirmed. The judgment of the trial court overruling the motion for a judgment n.o.v. as to count two of the complaint is affirmed as to all three Lightseys.
APPLICATION FOR REHEARING GRANTED.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.