JONES, Justice.
This appeal presents the issue whether the “open-ended” real estate mortgage executed by appellant Gejuane Simpson Green (“Mrs. Simpson”) and her former husband, Joe Simpson, providing security for the husband’s future indebtedness, may be foreclosed for nonpayment of debts incurred by the husband after the appellant personally notified the mortgagee that she would no longer assume any obligation for such indebtedness.

The Facts

In 1975, Joe and Gejuane Simpson jointly executed a real estate mortgage on their marital residence to the plaintiff, South-trust Bank of Sand Mountain (“Bank”). The mortgage secured a note executed the same day in the amount of $14,200 and *1290 further recited: “Whereas the said mortgagee may hereinafter during the continuance of these presents, make further advances to the said Mortgagors, and it is intended that the same, with interest, shall be secured hereby.” In 1977, the Simpsons jointly executed a renewal note in the amount of $17,432.10. At the time of trial, the balance due on this note was $527.99. Four days prior to executing the renewal note, the Simpsons jointly executed a loan guaranty agreement that guaranteed loans by the Bank to Joe Simpson for use in his automobile business.
In October 1983, Joe and Gejuane Simpson were divorced. Thereafter, and before additional advances were extended to Mr. Simpson, Mrs. Simpson went to the Bank and showed one of its officers the divorce judgment and told him that she now owned the home. She informed the Bank officer that Mr. Simpson was supposed to make the house payments and requested that the Bank inform her if he got behind. She also told him that she did not want to be responsible for his debts. Later, when she was informed that the Bank was foreclosing on the mortgage, she returned to the Bank and tendered the balance owed on the 1977 note. This tender was refused.
In December 1983, the Bank loaned Mr. Simpson $95,454.48, and on three separate occasions in 1985 the Bank loaned him more money, totalling $93,479.
The trial court’s findings of fact and conclusions of law here pertinent are as follows:
“In this case, the plaintiff bank is seeking to recover debts allegedly due by the defendants to the plaintiff bank, and to have the court declare that the indebtedness is secured by a mortgage on the former home of the defendants. There is no question that the plaintiff bank is entitled to recover against the defendant Joe Simpson for the amount claimed in plaintiffs amended complaint, $193,-449.38. The question in the case concerns the situation of the defendant Ge-juane Simpson.
“The court finds that the balance due under the note executed by both parties on December 9, 1977 (Plaintiff’s Exhibit 1A), is $527.99, and that the mortgage dated May 16, 1975 (Plaintiff's Exhibit 2A), secures said note.
“The court further finds that the defendant Gejuane Simpson, immediately after her divorce and before additional obligations were created by defendant Joe Simpson with the plaintiff bank, did go to the bank and display her divorce (Defendant Green’s Exhibit 1), and made known to the bank the change of the status previously existing between the defendants and of her desire not to be involved in any other transactions between the plaintiff bank and defendant Joe Simpson. The court notes the following statement in 1 of the agreement of the parties, which was part of the divorce judgment, to-wit: ‘It is further agreed that the plaintiff shall not record of record the deed or conveyance making the above transfer.’ (Referring to the property which is described in Plaintiff bank’s Exhibit 2A.) The agreement not to record the deed could only have one purpose, to-wit: that the conveyance or transfer of the subject property was not to affect the defendant Joe Simpson in his dealings with third parties, which included plaintiff bank.
“Plaintiff’s Exhibit 2A secures a particularly identified note and also other advances. The question before the court is whether said mortgage also secures advances made by the plaintiff bank to the defendant Joe Simpson after the divorce and after the defendant Gejuane Simpson’s visit to the bank with her divorce. In view of the fact that there is no evidence that any deed was delivered by the defendant Joe Simpson to Gejuane Simpson or that such deed was recorded and in view of the said agreement between the defendants, Gejuane Simpson and Joe Simpson, the subject property remained as security for advances made by the plaintiff bank to the defendant Joe Simpson.
“As to the guaranty agreement, the court is of the opinion that it had no *1291 force or effect at any time material to the issues in this case. The court notes that the guaranty agreement is incomplete, does not state the extent of the guaranty, or the person whose debts are to be guaranteed, and certainly after the plaintiff bank had notice of defendant’s divorce and her desire not to be responsible for his debts, it was plainly not authorized at that time to fill in the blanks to show debtor was Joe Simpson or to make loans to Joe Simpson and rely on such guaranty.”
The trial court’s findings “that the balance due under the note executed by both parties [the Simpsons] on December 9,1977 ... is $527.99, and that the mortgage dated May 16, 1975 ... secures said note” were undisputed, and thus not in issue at trial. Indeed, this balance was tendered by Mrs. Simpson and refused by the Bank prior to trial.
As the introductory paragraph of the trial court’s judgment indicates, two issues were presented at trial: 1) Whether Mrs. Simpson was indebted to the Bank for the four unpaid loans made to Mr. Simpson after Mrs. Simpson personally notified the Bank that she no longer would be responsible for further advances to her former husband; and 2) whether the mortgage secured (in addition to the 1977 note not in issue) the entire indebtedness owed by Mr. Simpson.
As a premise for its determination of these two questions, the trial court found that Mrs. Simpson “did go to the bank and display her divorce ..., and made known ... her desire not to be involved in any other transactions_” Based on this single factual premise, the trial court then reached opposite results with respect to the two documents relied upon by the Bank: It rescinded the guaranty agreement relied upon by the Bank in support of its claim of indebtedness; and it validated the mortgage relied upon by the Bank as security for the payment of the indebtedness.
The trial court seeks to justify validation of the mortgage on the supposition that Mrs. Simpson’s agreement not to record the deed was done for the purpose “not to affect the defendant Joe Simpson in his dealings with third parties, which includes plaintiff bank.”[1] Yet, the trial court recites the Bank’s “notice of [Mrs. Simpson’s] divorce and her desire not to be responsible for [Mr. Simpson’s] debts” as the basis for concluding that the Bank “was plainly not authorized at that time to ... make loans to Joe Simpson and rely on [the guaranty agreement].”[2]
If the trial court correctly concluded that the Bank’s notice of Mrs. Simpson’s “desire not to be responsible for [Mr. Simpson’s future] debts” invalidated the guaranty agreement — a conclusion of law not controverted on appeal — does the-same notice, with like force and effect, invalidate the mortgage with respect to all advances made to Mr. Simpson by the Bank after the date of the notice? We find no basis for this distinction.
Surely, it goes without saying that the mortgagor’s execution of the document as guaranty of future advances does not create an irrevocable encumbrance on the mortgaged property any more than it obligates the mortgagee to advance future loans. We note that the method of revocation is not here in issue.
Indeed, the Bank’s only argument in support of the trial court’s distinction between the revocation of the guaranty agreement and the validation of the mortgage is based on the trial court’s following “finding”: “The agreement [of Mrs. Simpson in the divorce proceeding] not to record the deed [of Mr. Simpson’s ¾⅛ interest in the home] *1292 could only have one purpose, to-wit: that the conveyance or transfer of the subject property was not to affect the defendant Joe Simpson in his dealing with third parties, which included plaintiff bank.”
Mrs. Simpson’s agreement in the divorce settlement “not to record the deed” is legally significant only if it amounted to a plan or design to defraud third parties, including the Bank. The possibility of any such plan or design, as it relates to the Bank, is totally negated by the trial court’s finding that Mrs. Simpson made an immediate and full disclosure to the Bank of the change in her marital status, of her former husband’s obligation to convey to her his interest in the subject property, and of her desire not to be involved in future transactions between her former husband and the Bank. Subsequent loans made by the Bank to Mr. Simpson, therefore, were not secured by the mortgage.
REVERSED AND REMANDED.
ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., and BEATTY J., concur in the result.

. Because the divorce judgment ordered Mr. Simpson to transfer his interest in the subject property to Mrs. Simpson, the trial court’s finding of "no evidence that the deed was delivered” is not a legal basis for validating the mortgage. Moreover, Mrs. Simpson’s title was not an issue at trial.

. We find no basis for the trial court’s conclusion that the guaranty agreement “has no force and effect” for the other ground stated in the trial court’s decree. For a case supportive of the trial court’s invalidation of the guaranty agreement on the "notice” ground, see Lightsey v. Orgill Bros. & Co., 454 So.2d 1002 (Ala.Civ. App.1984).